UNITED STATES, Appellee

v.

Daniel H. GASKINS, Staff Sergeant
U.S. Army, Appellant

No. 13-0016

Crim. App. No. 20080132

United States Court of Appeals for the Armed Forces

Argued February 19, 2013

Decided May 23, 2013

RYAN, J., delivered the opinion of the Court, in which ERDMANN, J., and EFFRON, S.J., joined. STUCKY, J., filed a separate opinion concurring in part and in the result. BAKER, C.J., filed a separate opinion concurring in part and dissenting in part.


Counsel

For Appellant: William E. Cassara, Esq. (argued); Captain James S. Trieschmann Jr. (on brief), Major Richard E. Gorini

For Appellee: Captain Chad M. Fisher (argued); Major Robert A. Rodrigues (on brief)


Military Judge: Timothy Grammel (trial judge); Gregg A. Marchessault (trial judge); Kirsten V. Brunson (rehearing judge)


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Gaskins, No. 13-0016/AR

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a panel composed of officer and enlisted members convicted Appellant of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006), repealed by National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 552, 119 Stat. 3136 (2006), and indecent acts with a child and indecent assault, both in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006).[1]  At his first sentence hearing, the panel sentenced Appellant to confinement for twelve years, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge.[2]  The convening authority approved the adjudged sentence.

Before the United States Army Court of Criminal Appeals (ACCA), Appellant alleged that the omission of a sentencing exhibit -- Defense Exhibit (DE) A -- from the record of trial

_____

[1] The conduct at issue took place in February and March of 2007, prior to the October 1, 2007 effective date of the amendments to Article 120, UCMJ.  Thus, at that time, carnal knowledge was an offense under Article 120, UCMJ, and indecent assault and indecent acts with a child were enumerated offenses under Article 134, UCMJ, as defined by the President, Manual for Courts-Martial, United States pt. IV, para. 63, 87 (2005 ed.) (MCM).

[2] On sentencing, the military judge ruled that the offenses charged in the Specification of Charge I, carnal knowledge, and the Specification of Charge II, indecent acts with a child, were multiplicious for sentencing.  Therefore, the maximum punishment was reduced from thirty-two years to twenty-five years.

2

constituted a substantial omission rendering the trial record incomplete under Article 54, UCMJ, 10 U.S.C. § 854 (2006). On August 27, 2010, the ACCA, sitting en banc, ordered that Appellant's case be returned to the Army Judge Advocate General for a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to determine (1) the exact contents of DE A, (2) whether the omission was substantial, and (3) whether reconstruction of the exhibit was possible. United States v. Gaskins, 69 M.J. 569, 572-73 (A. Ct. Crim. App. 2010) (en banc). On December 9, 2010, this Court granted a petition for extraordinary relief to prohibit the ACCA from ordering a DuBay hearing, concluding that a DuBay hearing to reconstruct DE A would be "inappropriate under the facts of this case," and remanded the case to the ACCA for further consideration of its options. Gaskins v. Hoffman, 69 M.J. 452 (C.A.A.F. 2010) (summary disposition). Upon remand, again sitting en banc, the ACCA set aside Appellant's sentence and authorized a sentence rehearing. United States v. Gaskins, No. ARMY 20080132, 2011 LEXIS 19, 2011 WL 498371 (A. Ct. Crim. App. Feb. 10, 2011) (en banc) (summary disposition) (unpublished).[3] On rehearing, the

---

[3] On February 28, 2011, Appellant filed a second petition for extraordinary relief seeking to enjoin the rehearing. On June, 1, 2011, this Court denied the petition without prejudice. Gaskins v. Hoffman, 70 M.J. 207 (C.A.A.F. 2011) (summary disposition).

adjudged and approved sentence provided for confinement for nine years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge.

We granted review of the following issues:

I.  WHETHER THE GOVERNMENT'S LOSS OF A SENTENCING EXHIBIT RENDERED THE RECORD OF TRIAL INCOMPLETE UNDER ARTICLE 54, UCMJ, RESULTING IN A JURISDICTIONAL LIMITATION ON THE SENTENCE TO ONE NO GREATER THAN THAT WHICH COULD BE APPROVED FOR A NON-VERBATIM RECORD.

II. WHETHER APPELLANT WAIVED THE FAILURE TO PLEAD THE TERMINAL ELEMENT OF THE ARTICLE 134 CHARGES BY HIS FAILURE TO RAISE THAT ISSUE AT THE SENTENCE REHEARING AND IF NOT, WHETHER THOSE CHARGES SHOULD BE DISMISSED BECAUSE THE GOVERNMENT FAILED TO PLEAD THE TERMINAL ELEMENT.[4]

The sentence limitation urged by Appellant is not compelled by any statute or any Rule for Courts-Martial (R.C.M.), and the ACCA did not abuse its discretion in ordering a rehearing on sentence.  However, we disagree with the ACCA that Appellant waived the Government's failure to plead the terminal element to the Article 134, UCMJ, specifications, and conclude that this error materially prejudiced Appellant's substantial right to notice.  See United States v. Humphries, 71 M.J. 209 (C.A.A.F. 2012).  Accordingly, we affirm the ACCA's decision in part and reverse it in part.

---

[4]  United States v. Gaskins, 71 M.J. 448 (C.A.A.F. 2012) (order granting review).

4

## I.  FACTS

In February 2007, Appellant was assigned to the North Atlantic Treaty Organization school in Latina, Italy.  Sergeant First Class (SFC) S was assigned as Appellant's sponsor to help him acclimate to the new assignment and the community.

On February 24, 2007, Technical Sergeant (TSGT) Daley, a friend of SFC S, hosted a party at his home.  During the party, Appellant brought SFC S's daughter, TS, who was twelve years old at the time, into a spare bedroom and put his hand down her pants.  TS pulled up her shirt, unsnapped her bra, and Appellant started "grabbing on [her] left boob and sucking on it."  After initially saying "No" when Appellant told her that "he wanted to be inside [her]," TS said "fine," and Appellant penetrated TS's vagina.

In March 2007, Appellant was reassigned from Latina to Naples, Italy, pending investigation into the incident with TS. In Naples, he met Staff Sergeant (SSG) AD, a fellow noncommissioned officer assigned to his unit.  On March 17, 2007, SSG AD ran into Appellant at the Navy Exchange.  Because Appellant was new to the area, she invited him to her house so that he could see the area and meet the community.  After stopping at SSG AD's house, they looked at his house and then went to a barbeque.  At the end of the night, SSG AD offered to let Appellant stay in her guest room because he had been

drinking. Before going to sleep, SSG AD went into the guest room to check on Appellant because she was concerned about how much he had to drink. SSG AD sat down on the foldout couch next to Appellant and asked if he was okay. Appellant then touched SSG AD's inner thigh and started moving his hand up her leg. SSG AD said "Stop," but Appellant persisted and penetrated her vagina with his finger. SSG AD pushed Appellant away, but he again penetrated her vagina with his finger. SSG AD then shoved him away more forcefully and left the room.

On February 8, 2008, following a contested trial, a general court-martial composed of officer and enlisted members convicted Appellant of carnal knowledge, in violation of Article 120, UCMJ, and indecent acts with a child and indecent assault, both in violation of Article 134, UCMJ. The panel sentenced Appellant to confinement for twelve years, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.

During sentencing, Appellant offered the following in mitigation: (1) the testimony of three witnesses about Appellant's rehabilitative potential; (2) an unsworn statement from Appellant; and (3) a single exhibit -- DE A -- that was described as a "Good Soldier Book" and contained various documents, such as Appellant's Marine Corps service record book, photos, awards, college transcripts, letters of commendation, and character letters.

At some point after trial, the Government misplaced DE A, and the exhibit was not included in the authenticated record of trial.[5]  Defense counsel's clemency submission to the convening authority described DE A as crucial to Appellant's sentencing case.  Despite the missing exhibit, the convening authority approved the adjudged sentence.  The ACCA, however, ultimately set aside Appellant's sentence and authorized a sentence rehearing.  Gaskins, 2011 LEXIS 19, at *3, 2011 WL 498371, at *1.[6]

Appellant's sentence rehearing was held on October 18, 2011.  The defense filed a motion to limit the maximum punishment to that which is permitted under R.C.M. 1103(f)(1) for a non-verbatim record:  six months' confinement, reduction to E-1, and forfeiture of two-thirds pay per month for six months.  R.C.M. 1103(f)(1).  The Government offered to stipulate to the contents of DE A, but the defense declined because it was uncertain about the precise nature of DE A's contents.  The military judge denied the defense motion to limit the maximum punishment.  However, she ruled that the Government would be limited in what it could offer in aggravation of the offenses.

---

[5]  In place of DE A, the Government attached to the record a memorandum for the record from the supervisory court reporter, which summarized the efforts to locate DE A and some portions of DE A.

[6] For a more detailed description of the procedural history see supra pp. 2-3.

In aggravation, the Government offered, and the military judge admitted, (1) Appellant's Official Military Personnel File (OMPF), (2) Appellant's Enlisted Record Brief (ERB), (3) several character letters copied from his post-trial clemency package, and (4) a stipulation of expected testimony of TS's mother. The defense offered only an unsworn statement from Appellant. After hearing the evidence, the military judge sentenced Appellant to confinement for nine years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority subsequently approved the adjudged sentence.

## II.  ACCA DECISION

On appeal from Appellant's sentencing rehearing, in a summary disposition, the ACCA held "the sentence as approved by the convening authority to be correct in law and fact," and affirmed both the findings and sentence. Gaskins, 2012 CCA LEXIS 259, at *4, 2012 WL 2887988, at *1.

With respect to the second granted issue, the ACCA noted, in a footnote, "that both the Specification of Charge II and the Specification of the Additional Charge fail to allege the terminal elements of a violation of Article 134, UCMJ." Gaskins, 2012 CCA LEXIS 259, at *3 n.*, 2012 WL 2887988 at *1 n.*. The lower court observed, however, that although this Court decided United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011), more than two months prior to Appellant's sentence

8

rehearing, "Appellant never made a motion to dismiss for failure to state an offense or otherwise objected to the form of the charges on Fosler grounds," nor did he raise a Fosler issue in his pleadings before the ACCA. Gaskins, 2012 CCA LEXIS 259, at *3 n.*, 2012 WL 2887988, at *1 n.*. "Because it was settled law at the time of [A]ppellant's rehearing that a failure to allege the terminal element[] in an Article 134, UCMJ offense constitutes error, [the ACCA] conclude[d] that [A]ppellant's failure to raise the issue constitute[d] a conscious waiver." Id. (citing Humphries, 71 M.J. at 212).

### III.  INCOMPLETE RECORD

The threshold question is whether a statute or rule either mandated the sentence limitation urged by Appellant or precluded the ACCA from permitting a sentence rehearing, where the record was incomplete because of the substantial omission of sentencing exhibit DE A. We review these questions of law de novo. United States v. St. Blanc, 70 M.J. 424, 427 (C.A.A.F. 2012).

The parties agree that:  (1) the Government is responsible for ensuring that a record is complete, (2) the record presented to the ACCA for its initial Article 66, UCMJ, 10 U.S.C. § 866 (2006), review did not include DE A, and (3) the omission of DE A was substantial, making the record incomplete under Article 54, UCMJ. See United States v. Henry, 53 M.J. 108, 111 (C.A.A.F. 2000) (stating that only "[a] substantial omission

9

renders a record of trial incomplete"). They disagree, however, as to the maximum authorized sentence under the circumstances, and whether, here, the ACCA was authorized to order a sentence rehearing.

Appellant argues that, confronted with an incomplete record on sentence, the ACCA was limited to affirming a sentence no greater than that which could be approved if there was not a verbatim transcript. Request for Clemency at 1 (July 11, 2008). Appellant further argues that an Article 54, UCMJ-compliant record is a "jurisdictional prerequisite to a valid sentence exceeding that which may be imposed in [the] absence of a complete record." Reply Brief for Appellant at 6, United States v. Gaskins, No. 13-0016 (C.A.A.F. Jan. 24, 2013). The Government, in turn, argues that a rehearing is one of two authorized options where a transcript is not verbatim, citing R.C.M. 1103(f). Brief for Appellee at 14, United States v. Gaskins, No. 13-0016 (C.A.A.F. Jan. 14, 2013).

A verbatim record is required when:

(i) Any part of the sentence adjudged exceeds six months confinement . . . or other punishments that may be adjudged by a special court-martial; or

(ii) A bad-conduct discharge has been adjudged.

R.C.M. 1103(b)(2)(B)(i)-(ii). R.C.M. 1103(f) explains the convening authority's remedial options where a verbatim

transcript cannot be prepared.  In such instances, the convening

authority may:

> (1) Approve only so much of the sentence that could be adjudged by a special court-martial, except that a bad-conduct discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved; or

> (2) Direct a rehearing as to any offense of which the accused was found guilty if the finding is supported by the summary of the evidence contained in the record, provided that the convening authority may not approve any sentence imposed at such a rehearing more severe than or in excess of that adjudged by the earlier court-martial.

R.C.M. 1103(f)(1)-(2).

The problem with both parties' reliance on R.C.M. 1103 is

that the provisions they point to are limited in their

application, by R.C.M. 1103's express terms, to instances where

a verbatim transcript cannot be prepared.  Id.  In this case,

the transcript is verbatim, but the record was otherwise

incomplete prior to the Appellant's clemency submission because

a defense sentencing exhibit was missing.  Cf. United States v.

McCullah, 11 M.J. 234, 236 (C.A.A.F. 1981) ("A 'complete record'

is not necessarily a 'verbatim record.'" (quoting United States

v. Whitman, 3 C.M.A. 179, 181, 11 C.M.R. 179, 181 (1953))).

While the lack of a verbatim transcript and an incomplete

record are separate and distinct errors under the R.C.M., we

think that distinction has been blurred based on dicta in Henry,

53 M.J. at 111, and other cases.  See also United States v.

11

Boxdale, 22 C.M.A. 414, 415, 47 C.M.R. 351, 352 (1973) (noting that "[i]nsubstantial omissions from a record of trial do not affect its characterization as a verbatim transcript"). Henry held that the omission of four prosecution exhibits was insubstantial and, thus, the record was not "incomplete," where the substance of the missing exhibits was corroborated by other exhibits in the record. Henry, 53 M.J. at 111; cf. McCullah, 11 M.J. at 237 (opining that "insubstantial omissions should not prevent characterizing a record as complete" (internal quotation marks omitted)). While not necessary to its holding in Henry, the Court asserted that "[r]ecords of trial that are not substantially verbatim or are incomplete cannot support a sentence that includes a punitive discharge or confinement in excess of 6 months. R.C.M. 1103(b)(2)(B)." Henry, 53 M.J. at 111. However, where, as here, the record includes a verbatim transcript, R.C.M. 1103(f)'s limiting provisions are inapposite.

Article 54, UCMJ, does require the preparation of a complete record of the proceedings in a general court-martial where "the sentence adjudged includes death, a dismissal, a discharge, or (if the sentence adjudged does not include a discharge) any other punishment which exceeds that which may otherwise be adjudged by a special court-martial." Article 54(c)(1)(A), UCMJ. Among other things, a complete record must contain "[e]xhibits, or, with the permission of the military

judge, copies, photographs, or descriptions of any exhibits which were received in evidence and any appellate exhibits." R.C.M. 1103(b)(2)(D)(v). However, the MCM -- including Article 54, UCMJ, and R.C.M. 1103 -- does not limit the court of criminal appeals' (CCA's) discretion to remedy an error in compiling a complete record.[7] Compare Article 19, UCMJ, 10 U.S.C. § 819 (2006) (conditioning a special court-martial's jurisdiction to impose certain punishments on, among other things, the availability of a "complete record" of the proceedings), and Article 18, UCMJ, 10 U.S.C. § 818 (2006) (placing no such limitation on the jurisdiction of a general court-martial), with R.C.M. 1103(f) (addressing the failure to prepare a verbatim transcript when required under the R.C.M. and listing remedial options).

In contrast, R.C.M. 810(a)(2) specifically authorizes a rehearing on sentence, as does Article 63, UCMJ, 10 U.S.C. § 863 (2006) (limiting the sentence that may be imposed at a rehearing), and Article 66(d), UCMJ (authorizing the CCA to order a rehearing). Where the CCA exercises its authority to order a rehearing on sentence, the record of the rehearing, in

---

[7] While we have recognized that "[a] substantial omission renders a record of trial incomplete and raises a presumption of prejudice," Henry, 53 M.J. at 111, whether a CCA, reviewing the record of trial pursuant to Article 66, UCMJ, is constrained in its ability to remedy the prejudice stemming from a substantial omission is a question of first impression.

concert with the record on findings, constitutes the complete record for review by the convening authority and the CCA, as required by Articles 54 and 66, UCMJ. While R.C.M. 1103(f) does not apply to an incomplete record, it would make little sense to permit a rehearing on findings to create a new record of trial as a remedy for the absence of a verbatim transcript, but not permit a rehearing on sentence to seek to cure any prejudice suffered from a missing sentence exhibit.

On these facts, nothing in Articles 18 or 54, UCMJ, and nothing in R.C.M. 1103 compels the limitation on sentence urged by Appellant or prohibits a rehearing on sentence. The question, then, is whether the ACCA's remedy for the incomplete sentencing record, which was to permit a rehearing on sentence, was an abuse of discretion or otherwise prejudiced Appellant.

On balance, we hold that the ACCA's remedy was appropriate under the circumstances of this case. We note that a CCA may order a rehearing where it sets aside a sentence adjudged by a lower court and approved by the convening authority. See Article 66(d), UCMJ; United States v. Sill, 56 M.J. 239, 240 (C.A.A.F. 2002); see also United States v. Miller, 10 C.M.A. 296, 299, 27 C.M.R. 370, 373 (1959) ("[W]e reaffirm our previous holdings that a case may be returned to a court-martial for rehearing on sentence only."). We further note that, on rehearing, the military judge took extra care to craft remedial

14

measures that sought to cure any prejudice Appellant may have suffered from the absence of DE A.  She ruled that any victim-impact evidence in aggravation would be time-limited to the date of the original presentencing hearing.  She further ruled that TS could not testify, allowing only a stipulation of expected testimony from TS's mother.  Moreover, we consider the fact that, on rehearing, Appellant's original sentence, awarded by members who had had every opportunity to review DE A -- confinement for twelve years, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge -- was reduced by three years' confinement as indicative that the ACCA's remedy was nonprejudicial in this case.[8]

Given that neither a statute nor an R.C.M. directs a particular remedial measure to address an incomplete record in a general court-martial, we hold that the ACCA did not abuse its discretion in ordering the rehearing, and that, under these facts, Appellant was not prejudiced by the chosen remedy.

---

[8] On rehearing, Appellant was sentenced to confinement for nine years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge.  The revised sentence is in accord with the requirement that a convening authority may not approve a sentence on rehearing that is more severe or in excess of the original sentence.  Article 63, UCMJ.

IV.  HUMPHRIES ISSUE

Appellant also argues that the specifications under Charge II and the Additional Charge both fail to state an offense because they do not allege the terminal element of Article 134, UCMJ.[9]  Where, as here, a specification neither expressly alleges nor necessarily implies the terminal element, the specification is defective.  Fosler, 70 M.J. at 229-30.  Because Appellant's trial occurred before our decision in Fosler, we deem Appellant's failure to object at trial to forfeit rather than waive the error.  Humphries, 71 M.J. at 211, 213-15.  Moreover, as the Government concedes, Appellant's failure to raise the issue at his sentence rehearing, which was held two months after this Court's decision in Fosler, did not constitute waiver

---

[9] The charges and specifications read as follows:

CHARGE II: VIOLATION OF THE UCMJ, ARTICLE 134. SPECIFICATION:  In that Staff Sergeant Daniel Gaskins, US Army, did, at or near Latina, Italy, on or about 24 February 2007, commit an indecent act with the body of [TS], a female under 16 years of age, not the wife of the said Staff Sergeant Daniel Gaskins, by sucking on her breast, kissing her on the mouth and rubbing her vaginal area with intent to gratify the lust of the said Staff Sergeant Daniel Gaskins and [TS].

ADDITIONAL CHARGE:  VIOLATION OF THE UCMJ, ARTICLE 134 SPECIFICATION:  In that Staff Sergeant Daniel Gaskins, US Army, did, at or near Lago Patria, Italy, between on or about 17 March 2007 and 24 March 2007, commit an indecent assault upon [AD], a person not his wife by touching [AD's] inner thigh with his hand, feeling around her vaginal area with his hand and digitally penetrating [AD's] vagina with his finger, with intent to gratify his sexual desires.

16

because a defense motion to dismiss the findings for failure to allege the terminal element was beyond the military judge's proscribed authority to conduct a rehearing on sentence. Cf. United States v. Smith, 41 M.J. 385, 386 (C.A.A.F. 1995) (holding that "a court can only take action that conforms to the limitations and conditions prescribed by the remand" (internal quotation marks omitted)).

In the absence of waiver, "where defects in a specification are raised for the first time on appeal, dismissal of the [defective specification] will depend on whether there is plain error -- which, in most cases, will turn on the question of prejudice." Humphries, 71 M.J. at 213. Here, the parties agree that it was plain and obvious error for the Government not to allege the terminal element in the specifications under Charge II and the Additional Charge. Id. at 212. "The question, then, is whether the defective specification[s] resulted in material prejudice to Appell[ant]'s substantial right to notice." Id. at 215; see also Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) ("A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.").

"Both [the Fifth and Sixth] [A]mendments ensure the right of an accused to receive fair notice of what he is being charged with." United States v. Girouard, 70 M.J. 5, 10 (C.A.A.F.

17

2011).  An Article 134, UCMJ, specification that fails to plead the terminal element does not put an accused on fair notice of which clause or clauses of the terminal element he must defend against.  Fosler, 70 M.J. at 230; see also United States v. Medina, 66 M.J. 21, 26-28 (C.A.A.F. 2008) (concluding that the three clauses of Article 134, UCMJ's terminal element are alternative theories of criminality and, therefore, declining to affirm a conviction on clauses 1 or 2 where the accused was charged with and tried for violating clause 3).

No one disagrees (1) with the Government's intuition that, generally speaking, servicemembers' bad acts can reflect poorly on the armed services, Brief for Appellee at 33, or (2) that the evidence of the bad acts in this case may be legally sufficient under this Court's precedent to prove that Appellant's conduct was "directly prejudicial to good order and discipline" or had "a tendency to bring the service into disrepute or which tends to lower it in public esteem."  MCM pt. IV, para. 60.c.(2)(a), (3) (2008 ed.).  However, where, as here, the Government fails to allege the terminal element, mention it during trial, or put on independent evidence of it, that the evidence of the bad acts may have been legally sufficient to prove the terminal element does not answer the altogether different question whether Appellant suffered material prejudice to his substantial right to notice and to defend himself.  See United States v. Goings,

18

__ M.J. __ (16) (C.A.A.F. 2013); United States v. Tunstall, __ M.J. __ (12-13) (C.A.A.F. 2013) (reversing the appellant's conviction where the charge sheet alleged that his conduct was indecent because the alleged victim was substantially incapable of declining participation, but the military judge allowed the panel to convict on an "open and notorious" theory); United States v. Lubasky, 68 M.J. 260, 264-65 (C.A.A.F. 2010) (rejecting the government's argument that this Court may affirm a conviction where the evidence was legally sufficient to prove a variant of the charged offense when (1) the factfinder based its findings on the charges and specifications as drafted, and (2) the offense proved at trial was not a lesser included offense of the charged offense).

The argument that an accused is not prejudiced by the government's failure to allege the terminal element because it is "intuitive" that the bad act discredited the military runs contrary to long-established principles of fair notice, as acknowledged in Fosler. To punish conduct that is to the prejudice of good order and discipline in the armed forces, or of a nature to bring discredit upon the armed forces, the government must establish (1) a predicate act or failure to act, and (2) the terminal element. Medina, 66 M.J. at 25. As Fosler makes clear, in charging an Article 134, UCMJ, offense, language describing (1) does not fairly imply (2). 70 M.J. at 229-31;

19

see also Goings, __ M.J. at __ (13-14). Suggesting that there was no prejudice because the predicate acts were "intuitively" prejudicial to good order and discipline and service discrediting fails to recognize Article 134, UCMJ's terminal element for what Fosler reiterated it is -- a discrete element of a criminal offense. 70 M.J. at 230 ("An accused cannot be convicted under Article 134 if the trier of fact determines only that the accused committed [the act]; the trier of fact must also determine beyond a reasonable doubt that the terminal element has been satisfied.").

Moreover, we are not operating in a vacuum; R.C.M. 907(b)(1)(B) establishes that the failure to state an offense is grounds for dismissing the charge. R.C.M. 907(b)(1)(B) (noting that a charge or specification that fails to state an offense is a nonwaivable ground for dismissal at any stage of the proceeding). In Humphries, however, we concluded that, in the context of a defective Article 134, UCMJ, specification raised for the first time on appeal, the failure to allege the terminal element is not necessarily structural error warranting automatic dismissal, but error that can be tested for prejudice. Humphries, 71 M.J. at 213; see generally Tunstall, __ M.J. at __ (16-18) (finding no prejudice where the defense introduced evidence for the specific purpose of negating the terminal element); Goings, __ M.J. at __ (16) (finding no prejudice where

the appellant "was put on notice that the Government intended to prove that his conduct was both prejudicial to good order and discipline and service discrediting and [] defended himself against those theories of guilt"). Thus, where a defective specification: (1) was tried prior to our decision in Fosler, and (2) was raised for the first time on appeal, we test that error for prejudice, which turns on whether that error frustrated an accused's right to notice and opportunity to zealously defend himself, Humphries, 71 M.J. at 215-16; cf. Lankford v. Idaho, 500 U.S. 110, 124 (1991) (observing that "the question is whether inadequate notice . . . frustrated counsel's opportunity to make an argument that might" have influenced the outcome), which depends in turn on "whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'"[10] Humphries, 71 M.J. at 215-16 (quoting United States v. Cotton,

---

[10] We continue to find the standard of prejudice set out in United States v. Dominguez Benitez, 542 U.S. 74 (2004), ill-suited for defective Article 134, UCMJ, specifications tried prior to Fosler. See, e.g., Humphries, 71 M.J. at 215 n.7 (noting that "Dominguez Benitez is inapposite" because, among other reasons, "any objection by Appellee at trial would have been futile based on the law at the time -- which also alleviates the 'sandbagging' concerns noted in [Puckett v. United States, 556 U.S. 129, 134 (2009)]"). Different considerations would apply, however, with respect to cases tried after Fosler was decided because that case clarified for the field that the terminal element of Article 134, UCMJ, is a discrete criminal element that -- like any other criminal element -- must be independently pleaded and proven.

535 U.S. 625, 633 (2002) (finding that evidence of the omitted drug quantity was "overwhelming" and "essentially uncontroverted" where the Government put on independent evidence going beyond mere possession to prove that the conspiracy involved a drug quantity sufficient to increase the statutory maximum)).

Here, there was no overwhelming evidence. As the Government concedes, no direct evidence was put on to prove the terminal element. Brief for Appellee at 30. Neither clause 1 nor 2 was directly or indirectly mentioned by either party until the military judge instructed the members on the elements of the Article 134, UCMJ, specifications, nor did the Government proffer any physical evidence or witness testimony as to how Appellant's acts might have affected either his unit or the public's opinion of the armed forces, nor did the defense indicate that they knew they were defending against either theory of liability. Compare, e.g., Tunstall, __ M.J. at __ (16-18) (finding no prejudice where the trial record indicated that the defense introduced evidence for the specific purpose of negating the terminal element, thus indicating that he defended himself against it); Goings, __ M.J. at __ (17-18) (finding no prejudice where witnesses testified that the appellant's conduct was prejudicial to good order and discipline and service discrediting, and the appellant vigorously defended against the

22

terminal element); and see United States v. Ballan, 71 M.J. 28, 35 (C.A.A.F. 2012) (finding no prejudice in the context of a guilty plea where the appellant was informed of the terminal element and explained why his acts were service discrediting).

Where, as here, (1) Appellant's trial occurred before this Court's decision in Fosler, (2) no mention or evidence of the terminal element is extant in the record of trial, and (3) the evidence at trial did not otherwise notify Appellant of the Government's theory of criminality, or show that Appellant nonetheless did defend against the terminal element, it is impossible to guess what Appellant's strategy might have been had the Government alleged the terminal element and put Appellant on notice of which theory of criminality it was pursuing. Cases, like this one and Humphries, where the Government fails to (1) allege an element of the offense, (2) mention its theory of criminality with respect to the terminal element, and (3) put on any direct evidence of the terminal element are simply inapposite to those Supreme Court cases in which the Government put on evidence that went directly to the omitted aggravating factor or element, see, e.g., United States v. Cotton, 535 U.S. 625 (2002); Neder v. United States, 527 U.S. 1 (1999), unless we disregard the sage reminder from Fosler that the elements of Article 134, UCMJ, are distinct and non-fungible. Fosler, 70 M.J. at 230.

In this case, the Government relied solely on evidence of the bad acts, the first element of Article 134, UCMJ, to prove the offenses at trial. The military judge instructed the members in the disjunctive, telling them that they could find Appellant guilty of the Article 134, UCMJ, specifications if they concluded that Appellant's conduct was either prejudicial to good order and discipline or service discrediting. Under these circumstances, both Appellant and this Court lack knowledge of a matter of critical significance -- namely, on which theory of criminality Appellant was tried and convicted, see Medina, 66 M.J. at 26 (concluding that the three clauses of the terminal element are alternative theories of criminality).

We decline the Government's invitation to speculate as to whether Appellant would or could have defended himself differently if the Government had either proffered its theory of criminality or introduced evidence directly proving at least one theory of criminality satisfying the terminal element. Cf. Chiarella v. United States, 445 U.S. 222, 236-37 (1980) (stating that the Court would not affirm a conviction based on a theory not presented to the jury); Dunn v. United States, 442 U.S. 100, 107 (1979) ("[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial."); Medina, 66 M.J. at 27 ("[A]n

appellate court may not affirm on a theory not presented to the trier of fact and adjudicated beyond a reasonable doubt.").[11]

Because Appellant was never given notice of the theory of criminality the Government pursued, and no evidence was introduced on any theory, we cannot say that the errors in the Article 134, UCMJ, specifications were cured. See Humphries, 71 M.J. at 217; see also Tunstall, __ M.J. at __ (17); Goings, __ M.J. at __ (17). Accordingly, we hold that the Government's failure to allege the terminal element in Charge II and the Additional Charge was plain and obvious error that materially prejudiced Appellant's substantial right to notice under the Fifth and Sixth Amendments as to which theory or theories of liability under Article 134, UCMJ, he needed to defend himself against. See Article 59(a), UCMJ. The findings of guilt as to indecent assault and indecent acts with a child in violation of Article 134, UCMJ, are hereby set aside. See Humphries, 71 M.J. at 217.

---

[11] The Government leaves no doubt as to its belief that it would have been foolhardy for Appellant to have defended himself on the theory that his conduct was not prejudicial to good order and discipline or service discrediting, Brief for Appellee at 33-34, but the Fifth and Sixth Amendments protect Appellant's right to make that determination for himself. See Goings, __ M.J. at __ (18) (finding no prejudice where the appellant was given the opportunity to defend himself against the terminal element and did so); Tunstall, __ M.J. at __ (17) (same).

### V.  LESSER INCLUDED OFFENSE

The remaining question is whether we may nonetheless affirm a finding of assault consummated by battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2006), as a lesser included offense (LIO) of indecent assault.[12]  See Article 59(b), UCMJ.

"The due process principle of fair notice mandates that 'an accused has a right to know what offense and under what legal theory' he will be convicted; an LIO meets this notice requirement if 'it is a subset of the greater offense alleged.'" United States v. Jones, 68 M.J. 465, 468 (C.A.A.F. 2010) (quoting Medina, 66 M.J. at 26-27).  "This Court applies the elements test to determine whether one offense is an LIO of another."  United States v. Wilkins, 71 M.J. 410, 412 (C.A.A.F. 2012).  "[A]pplying normal rules of statutory interpretation and construction, this Court will determine whether the elements of the LIO would necessarily be proven by proving the elements of the greater offense."  Id.

At the time the acts occurred, the elements of indecent assault, as charged, were:

(1)  That the accused did bodily harm to a certain person;

---

[12] We are not aware of any LIOs of indecent acts with a child, as charged, that do not require proving Article 134, UCMJ's terminal element.  Thus, because Appellant was never put on notice of the terminal element, we cannot affirm any LIO of indecent acts with a child.

    (2)    That the act was done with unlawful force or violence;

    (3)    That the person was not the spouse of the accused;

    (4)    That the acts were done with the intent to gratify the lust or sexual desires of the accused; and

    (5)    That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM pt. IV, para. 54.b.(2), 63.b. (2005 ed.).  The elements of assault consummated by battery were:

    (1)    That the accused did bodily harm to a certain person; and

    (2)    That the bodily harm was done with unlawful force or violence.

Id. at para. 54.b.(2).

After comparing the elements of the two offenses, it is evident that each element of assault consummated by battery would necessarily be met by proving the first two elements of indecent assault.  The specification of the Additional Charge alleged the elements of assault consummated by battery, see supra n.9, and the evidence is legally sufficient to support a finding of guilty as to this offense.  Therefore, we affirm only so much of the Additional Charge and its specification that extends to findings of guilty to the LIO of assault consummated by battery in violation of Article 128, UCMJ.

## VI.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed as to Charge I and its specification, reversed as to Charge II and its specification, and reversed as to the Additional Charge and its specification.  Charge II and its specification are dismissed with prejudice.  We affirm only so much of the Additional Charge and its specification that extends to findings of guilty to the lesser included offense of assault consummated by battery in violation of Article 128, UCMJ.  The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence in light of our action on the findings.

United States v. Gaskins, No. 13-0016/AR

STUCKY, Judge (concurring in part and in the result)

I concur with the majority that, under the circumstances of this case, the rehearing remedied the loss of Appellant's Good Soldier Book after his original sentencing hearing. For the reasons set out in my dissent in United States v. Humphries, 71 M.J. 209, 219 (C.A.A.F. 2012) (Stucky, J., dissenting), and referred to in my recent concurrence in United States v. Tunstall, __ M.J. __, __ (1–2) (C.A.A.F. 2013) (Stucky, J., concurring in the result), I respectfully disagree with the majority's holding that Appellant was materially prejudiced by the failure of the specifications alleged under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), to allege the terminal element. See Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006).

Nonetheless, it is apparent that at present the majority of this Court continues to adhere to the truncated test for plain error that has been followed at least since United States v. Powell, 49 M.J. 460 (C.A.A.F. 1998). Having no desire to reargue the issue each time we encounter a plain error situation, and considering myself bound, as we all are, by the precedents of the Court, I will await a case in which the issue of which test to apply is squarely presented.

I therefore concur in the result.

<u>United States v. Gaskins</u>, No. 13-0016/AR

BAKER, Chief Judge, (concurring in part and dissenting in part):

I concur in the Court's analysis of Issue I. With respect to Issue II, I adhere to my earlier views expressed in <u>United States v. Fosler</u>, 70 M.J. 225, 240 (C.A.A.F. 2011) (Baker, J., dissenting). Applying that analysis <u>mutatis</u> <u>mutandis</u> to this case involving Appellant's indecent acts with a servicemember's dependent and Appellant's indecent assault of Staff Sergeant AD, I would affirm on Issue II as well.