# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39299**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ryerson L. CLIFFORD**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 January 2019

————————————

*Military Judge:* Marvin W. Tubbs, II.

*Approved sentence:* Dismissal and confinement for 9 months. Sentence adjudged 9 May 2017 by GCM convened at Cannon Air Force Base, New Mexico.

*For Appellant:* Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Joseph Kubler, USAF; Captain Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, MINK, and LEWIS, *Appellate Military Judges*.

Chief Judge MAYBERRY delivered the opinion of the court, in which Judges MINK and LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MAYBERRY, Chief Judge:

Appellant was found guilty by a military judge, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of three specifications of aggravated assault with a loaded firearm likely to produce death or grievous bodily

harm,[1] three specifications of assault consummated by a battery for pushing and kicking his wife, three specifications of child endangerment by culpable negligence (stemming from the three incidents where he pushed and kicked his wife, who was holding their infant child at the time),[2] and one specification of willfully discharging a firearm in an occupied room under circumstances such as to endanger human life, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934. The military judge sentenced Appellant to a dismissal and confinement for 16 months. Pursuant to the PTA, the convening authority approved only nine months of confinement, deferred automatic forfeitures of pay and allowances until action, and waived the automatic forfeitures from the date of action for a period of six months, or until Appellant's release from confinement or expiration of his term of service, whichever sooner, for the benefit of Appellant's spouse.

Appellant raises one issue for our consideration on appeal: (1) whether the absence of four attachments to the stipulation of fact constitutes an incomplete record of trial for which he should receive sentence relief. We find the record of trial to be substantially complete, and therefore find no relief warranted.

## I. BACKGROUND

Appellant was a rated crewmember qualified in a number of airframes. At the time of his offenses, Appellant had ten years commissioned service and was serving as a U-28A Combat Systems Officer. Earlier in his career, while in mission crew commander training, he was administratively disciplined after being arrested for operating a vehicle under the influence of alcohol, and as a result was removed from training for one year. Although Appellant was ultimately permitted to return to flying status, he was non-selected for promotion to the rank of major, and was facing administrative separation action from the

---

[1] Appellant was originally charged with two specifications of assaulting two different superior commissioned officers in the execution of their official duties in violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 890. Appellant offered to plead guilty, and the convening authority agreed, to the lesser-included offense of aggravated assault. At trial, the military judge found that aggravated assault was not a lesser-included offense, but agreed to accept Appellant's plea in accordance with the PTA. We need not address the military judge's determination as to whether Article 128, 10 U.S.C. § 928, is a lesser-included offense of Article 90.

[2] The military judge granted the uncontested motion to find the two assault specifications involving Lieutenant Colonels PW and DE, the three assault specifications involving Appellant's wife, and the three child endangerment specifications unreasonably multiplicious for sentencing purposes. This finding dropped the maximum authorized confinement from 29 years and six months to 18 years and six months.

Air Force as a result of his non-selection for promotion on the date the offenses occurred.

On 21 August 2016, Appellant consumed a large amount of alcohol at home, and during the early evening hours he engaged in a telephone conversation with another squadron member, and ultimately that squadron member's spouse. The phone call turned contentious and concluded with Appellant exclaiming, "F**k you, don't ever talk to me again." After hanging up, Appellant discussed with his wife, KC, why the phone call had gone so badly. During the course of that discussion, KC poured Appellant's drink down the drain and placed the plastic cup in the sink. Appellant retrieved the cup and threw it at KC. During this time, KC was holding the couple's ten-month-old daughter. Appellant then proceeded to push KC twice, the second time causing KC and the baby to fall to the floor. While KC was on the floor, Appellant kicked her as she continued to hold their daughter in her arms. KC ultimately left their home taking the infant and their three-year-old daughter with her next door to the home of another military family.

The neighbor called Appellant's commander, Lieutenant Colonel (Lt Col) PW, and asked for help. Before Lt Col PW arrived, KC returned to the house to get her wallet. She found Appellant in their bedroom, with multiple weapons and ammunition on the bed, loading magazines. When KC asked Appellant what he was doing, he told her to get out or he would shoot her. He then pinned her up against the wall with the gun in his hand and told her to go away, giving her until the count of ten. Unable to find her wallet, KC walked through the house, pausing briefly in the kitchen to grab a cell phone off the counter. Appellant having followed her, was in the kitchen as well, counting down, and discharged a round from the handgun on the count of "three." That round went into the front of the oven. KC then fled the home and waited for Lt Col PW to arrive.

Lt Col PW, along with the squadron director of operations, Lt Col DE, arrived and learned from KC that Appellant was intoxicated and laying out weapons and ammunition. KC did not tell them of the assaults that had already taken place in the house. KC gave them the keys to the house and Lt Cols PW and DE went together to the door, found it unlocked, and entered the home. They announced their presence and shortly after stepping into the house, Appellant came around the corner of the kitchen, alternately pointing the weapon at each of their heads, and told them to leave. Despite both Lt Cols PW and DE saying they only wanted to talk, Appellant walked toward the two men, continuing to point the weapon. Lt Cols PW and DE walked backwards out of the door, each going in a different direction after leaving the front porch but stopping in the yard. Appellant remained on the porch with the weapon raised and alternated pointing it at each of them. After a short time, Appellant

then returned inside the home and Lt Cols PW and DE returned to the neighbor's yard.

While Lt Cols PW and DE were deciding what to do next, Appellant came out of the house, with his hands in the air indicating he was unarmed, stating "call the police," "the guns are in the house," and that "he has been to jail before." Lt Col PW and DE patted Appellant down, removed a loaded magazine from his back pocket, and tossed it on the ground. They spoke with Appellant, assessing that he had not eaten for quite some time, and ultimately took Appellant to get some food. While in the car, Appellant continued to ask Lt Cols PW and DE precisely where they lived. Later in the evening, Lt Cols PW and DE transported Appellant to the local hospital for evaluation. Appellant had a blood alcohol content of 0.158 percent at 2125 hours, and he remained in the hospital overnight. The following day, Appellant was transported to a medical facility in El Paso, Texas, where he spent 45 days in inpatient treatment.

After the events of 21 August 2016, Appellant was issued three no-contact orders, one each prohibiting him from contacting the families of Lt Cols PW or DE (both members deployed just days after the incident), and his own wife and children. Over time, the restrictions concerning Appellant's family were incrementally lessened, and Appellant was allowed to move back in with his family a few weeks prior to his trial.

## II. DISCUSSION

### A. Additional Background

The original record of trial (ROT) forwarded to this court did not contain four attachments to Prosecution Exhibit (PE) 1, the stipulation of fact. Attachment 1 is a depiction of the floor plan of Appellant's home; Attachment 2 is "oven pictures;" Attachment 3 is the Sanity Board (Short Report), dated 29 November 16; and Attachment 4 contained 29 pages from the Diagnostic and Statistical Manual of Mental Disorders (DSM)-5.

After Appellant filed his assignment of error, the Government jointly filed its answer and a motion to attach identical copies of the missing PE 1 attachments, along with an affidavit from the assistant trial counsel attesting to the accuracy and completeness of the attachments. While the court did grant the motion to attach, we did not consider the additional documents in our Article 66, UCMJ, 10 U.S.C. § 866, review.

### B. Law

The issue of whether a ROT is complete is a question of law that we review de novo. *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000).

Article 54(c)(1), UCMJ, 10 U.S.C. § 854(c)(1), and Rule for Courts-Martial (R.C.M.) 1103(b)(2)(D)(v) require that a complete record of proceedings, including all exhibits received into evidence, be prepared for all general courts-martial that result in a sentence to a punitive discharge. *United States v. Lovely*, 73 M.J. 658, 676 (A.F. Ct. Crim. App. 2014).

R.C.M. 1103(f)(1) imposes sentence limitations when a required verbatim transcript cannot be prepared. R.C.M. 1104(d) addresses the process for correcting a record of trial after authentication.

If a record contains a verbatim transcript, but is otherwise incomplete, "R.C.M. 1103(f)'s limiting provisions are inapposite." *United States v. Gaskins*, 72 M.J. 225, 230 (C.A.A.F. 2013). Instead, this court's power to remedy an incomplete record that contains a verbatim transcript stems from Article 66, UCMJ. *Id.* at 231.

A record of trial that is missing exhibits may be substantially incomplete. *Stoffer,* 53 M.J. 26 (holding that the record was substantially incomplete for sentencing when all three defense sentencing exhibits were missing). However, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (holding that four missing prosecution exhibits were insubstantial omissions when other exhibits of similar sexually explicit material were included). "[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the government must rebut." *United States v. Harrow*, 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). We must approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted).

## C. Analysis

Appellant asserts the failure to properly include these attachments constitutes a substantial omission in light of trial counsel's reference to these documents during the sentencing argument, specifically the DSM-5 materials addressing alcohol use disorder. As a result, Appellant requests relief based on the sentencing limitation of R.C.M. 1103. The Government concedes that the original record was forwarded to this court without including Attachments 1–4 of PE 1. However, the Government avers that its motion to attach "identical copies" negates the need for the record to be reconstructed. We disagree with the positions of both parties, but find the *authenticated* record is substantially complete.

There is no question that the original ROT does not contain the four attachments to PE 1. The Government's attempt to "reconstruct" the record fails because there was no certificate of correction in accordance with R.C.M. 1104(d). Additionally, the deficiency of the ROT does not affect the verbatim transcript, and therefore R.C.M. 1103(f) is inapplicable. We note the attachments, while identified on PE 1, are not incorporated into the total page count of PE 1. Furthermore, when PE 1 was offered into evidence, the military judge pointed out that the attachments were not included and a short recess was taken to ensure all parties had the complete exhibit. Despite this red flag, all of the trial participants failed to ensure the complete exhibit was included in the record. Finally, and most relevant, the military judge authenticated the record without the attachments. Despite these facts, we find the record contains sufficient information to allow us to fully perform our appellate review function pursuant to Article 66. *See Abrams*, 50 M.J. at 363.

In *Stoffer*, the Court of Appeals for the Armed Forces concluded the absence of three defense exhibits was a substantial omission and did not approve the punitive discharge. 53 M.J. at 28. However, in accordance with *Abrams*, the holding in *Stoffer* must be limited to the facts of that case. *Stoffer* involved the introduction of three defense exhibits that were admitted without any further identification as to what the exhibits were or what was contained within them, and the exhibits were never referred to again after their introduction or otherwise identified in the ROT. *Id.* at 27. Holding that it could not "presume" what information was contained in the exhibits and finding the Government had failed to overcome the presumption of prejudice from the exhibits' absence in the ROT or show their omission to be harmless error, the court did not approve the bad-conduct discharge. *Id.* However, this case is distinguishable from *Stoffer* because the facts of the case at hand are substantially different. This case is more similar to *Henry* where the absence of prosecution exhibits was found insubstantial because other matters within the record contained similar material. *See Henry*, 53 M.J. at 111.

Here, two of the four missing attachments are in fact contained within the authenticated ROT. The floor plan was also introduced in a much larger format as Attachment 1 to PE 2. Furthermore, the Short Report is also contained in the preliminary hearing officer's (PHO's) report as PHO Exhibit 5 and as Attachment 7 to Appellant's offer to resign in lieu of court-martial submitted on 4 January 2017. With respect to the "oven photos," Appellant's guilty plea and his wife's testimony during sentencing leave no question that Appellant discharged a weapon into the oven. Additionally, paragraph 7 of the stipulation of fact explains the "shot shattered the front of the oven and destroyed the internal mechanics." That leaves only the assorted pages from the DSM-5. The Short Report includes diagnoses of "Unspecified Depressive Disorder and Alcohol Use Disorder – Severe – In Early Remission." Trial counsel's sentencing

argument makes two references to the missing pages, quoting a portion of the DSM-5 attachment and then arguing as to why another aspect should be disregarded by the military judge:

> . . . "Alcohol use disorder has a variable course that is characterized by periods of remission and relapse. A decision to stop drinking, often in response to a crisis" – such as this – "is likely to be followed by a period of weeks or more of abstinence. It's often followed by limited periods of controlled or non-problematic drinking." . . . "However, once alcohol intake resumes, it is highly likely that consumption will rapidly escalate and that severe problems will once again develop."
>
> . . . .
>
> And you understand that one of those disorders that you can read about in the attachment affects the way that he portrays his emotion, it doesn't portray the words that come out of his mouth. Because immediately after the event, the words that came out of his mouth were, "Call the cops. I've been to jail before. Do what you have to do."

After a review of the entire ROT, we are confident that the missing attachments are insubstantial omissions and the record is substantially complete. The missing attachments have no impact on the underlying evidence or the providence of Appellant's guilty pleas. Specifically, the floor plan and the Short Report are found elsewhere in the record. The absence of the oven photos in no way diminishes our ability to conclude that Appellant discharged a weapon in the kitchen while his wife was present. With respect to the DSM-5, the Short Report contains the relevant diagnoses, but not the explanatory verbiage contained in the missing pages. Neither Appellant nor his counsel directly referred to the attachments in the sentencing phase of the trial.

Appellant's unsworn statement, however, did touch on the impact alcohol and depression had on his life. Appellant spoke of how his treatment taught him to understand his lack of emotional intelligence—"from always living in a logic mind frame and dealing with things in a linear fashion"—contributed to his drinking because it would "bring out the softer side of him, or the emotional loving side." He further addressed how he has difficulties expressing his emotions, often coming across flat in circumstances where others would act differently. Additionally, he accepted that he is "an alcoholic, to a degree," and would "probably never drink again"—opining that he should have recognized his drinking problem after his earlier arrest for driving under the influence (DUI) of alcohol, but candidly stating "at that point in time I wasn't really ready to stop." Trial counsel argued that if Appellant were to return to drinking, the

language of the DSM-5 indicates a high probability such drinking would escalate rapidly and lead to severe problems developing once again. Appellant's history of alcohol related problems was readily evident by the fact that he had a prior DUI offense, which was a contributing factor to his non-selection for promotion. This non-selection was fully addressed by Appellant and his wife as being one of the contributing factors to Appellant's depression, which was in turn a contributing factor to his excessive drinking, including the day of the incident.

Accordingly, we find any error as a result of the omission of the attachments to PE 1 in this case to be harmless. The full extent of how alcohol and depression impacted Appellant is well documented in the record and available for our Article 66 review. Furthermore, we note that Appellant also requested a dismissal, the most severe component of the sentence imposed. Appellant acknowledged this was the most appropriate, "even if it is just one blip on a decade of service." Avoiding confinement was the focus of both his and his counsel's sentencing strategy. The crux of Appellant's sentencing case was that he wanted to put all of this behind him and be with his family. The military judge considered all of the evidence available and determined an appropriate punishment. The absence of the attachments to PE 1 in no way prejudice our ability to fully conduct appellate review under Article 66.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court