UNITED STATES, Appellee,

v.

Specialist Timothy A. WILLIAMS, 485–98–2656, United States Army, Appellant.

ACMR 9100798.

U.S. Army Court of Military Review.

29 Jan. 1993.

For Appellant: Captain Robin N. Swope, JAGC, Captain Robert L. Carey, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Donna L. Barlett, JAGC, Captain Richard O.I. Brown, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

DELL'ORTO, Judge:

Contrary to his pleas, the appellant was found guilty, by a general court-martial comprised of officer and enlisted members, of murder, assault consummated by a battery upon a child under 16 years (four specifications), aggravated assault (two specifications), and false swearing, in violation of Articles 118, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 918, 928, and 934 (1982) [hereinafter UCMJ]. The court-martial sentenced the appellant to reduction to Private E1, forfeiture of all pay and allowances, confinement for the length of his natural life, and a dishonorable discharge. The convening authority limited the forfeitures to all pay in excess of $700.00 pay per month for 36 months, but otherwise approved the adjudged sentence.

The appellant contends that the military judge erred by admitting certain statements of the appellant that lacked adequate corroboration and by failing to properly instruct the members on an element of Specification 6 of Charge II (aggravated assault). He also contends that failure to include a copy of the flyer in the record of trial rendered the record incomplete and, therefore, nonverbatim, and that the staff judge advocate's post-trial recommendation was erroneous and misleading because it incorrectly advised the convening authority that, in Specification 4 of Charge II, the appellant had been found guilty of aggravated assault when he had actually been found guilty of assault consummated by a battery upon a child under 16 years. Finally, the appellant contends that the court-martial lacked jurisdiction because the military judge did not have a fixed term of office and was designated in violation of the Appointments Clause of the United States Constitution.

### I. Facts

During the evening of 2 February 1991, the appellant babysat his seven-month-old

daughter, Jessica, while his wife attended a bible study. Jessica was alive when Mrs. Williams departed their home at 2030 hours. Upon her return at about 2345 hours, Jessica was dead. The appellant's landlord, who resided in the same building as the appellant's family, responded to Mrs. Williams' screams and called Doctor Hans–Joachim Jentschke, who arrived at the appellant's home at approximately 0020 hours, 3 February 1991. After noting the absence of any vital signs, he confirmed that Jessica was dead. During his examination of Jessica, he noted that her skin was pale and relatively warm. He was surprised to discover nothing in Jessica's mouth as he had initially believed that she had suffocated. Although Jessica's body was partially clothed during his examination, he did observe two "green-blue" or "black," bow-shaped bruises, each the size of a two deutsche mark piece, on her back.

Criminal Investigation Division Command (CID) Special Agent (SA) Helen Jones spoke with the appellant briefly in the early morning hours of 3 February. The appellant told SA Jones that his wife had attended a bible study on the evening of 2 February 1991; he fed Jessica at about 2200 hours and then put her to bed; when his wife called to inform him that she was returning from the bible study, he went to awaken Jessica and discovered that she wasn't breathing; and, his efforts at cardiopulmonary resuscitation (CPR) failed to revive her. On 5 February 1991, SA Jones conducted a 60–minute interview of the appellant. Although SA Jones was aware that there had been some bruises on Jessica's legs, she believed that the cause of death had been accidental suffocation. She did not advise the appellant of his rights[1] just as she had not on 3 February. The interview resulted in the appellant's first sworn written statement, in which he merely reiterated in greater detail what he had stated to SA Jones on 3 February. This statement later became the basis of Additional Charge II and its Specification (false swearing).

The appellant's third CID interview was conducted on 8 February 1991, after a radiological examination of Jessica's body and preliminary autopsy findings revealed injuries inconsistent with a cause of death of Sudden Infant Death Syndrome (SIDS). Among the injuries were broken ribs, broken legs, and severe bruising to both sides of the head. Prior to this interview, SA Leavey properly advised the appellant of his rights and advised the appellant that he was suspected of Jessica's murder. The appellant executed a proper rights warning waiver. When confronted with Jessica's injuries, the appellant informed SA Leavey that: (1) Jessica had begun to cry frequently during December 1990; (2) in response to her crying, beginning on 31 December 1990, and on a number of dates thereafter, he struck Jessica "hard" on either the back, leg, or side of the head with his open hand; (3) on one occasion he intentionally dropped Jessica to the floor from a height of about three feet; and, (4) on one occasion he accidentally dropped her to the floor from a similar height when she squirmed in his arms. Although he admitted striking Jessica on the head at about 0300 hours on 2 February 1991, he denied striking her during the evening of that date while his wife was at the bible study. The appellant indicated that all of the assaults occurred either when his wife was away from the home shopping or at a bible study, or while his wife was asleep at night or in another room during the day. The appellant did not suspect that his wife had struck Jessica. These admissions were contained in two written statements sworn to and subscribed by the appellant on 8 February 1991.

Major (MAJ) John Daniel, the forensic pathologist who conducted the 8 February 1991 autopsy of Jessica's body, was qualified as an expert in forensic pathology and established the following findings pertinent to Jessica's death: (1) at the time of her death, Jessica was 30 to 31 inches long and weighed 15 pounds; (2) external examination of the body revealed a number of bruises to the forehead, upper left chest,

---

1. Those rights currently are codified in Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 305 [hereinafter MCM, 1984 and Mil.R.Evid.].

lower right chest, and upper right thigh, but were not the cause of death; (3) there were three fractures of the right knee and two fractures of the left knee, the result of sudden, violent twisting, pulling, or shaking of the bones anywhere from four hours to one month prior to death; (4) there were nine sites of broken ribs—one rib had multiple fractures inflicted at different times—with the fractures at various stages of healing, having occurred anywhere from several hours to six weeks prior to death; (5) bruises to the head that had occurred less than four hours prior to death; (6) there were coup and contrecoup bruises to the brain indicative of the head being set in motion and impacting against a flat, solid object within four hours of death; and, (7) there was a fresh subdural hematoma at the top of the brain and retinal hemorrhaging in every part of both eyes. Major Daniel opined that there had been direct injury to the brain tissue resulting in swelling of the tissue. He testified that the combination of the brain swelling and the extra fluid present in the hematoma had increased the pressure inside the skull, thereby damaging the breathing centers at the base of the skull where the spinal cord exists. He concluded that Jessica's death was caused by a single impact to the head within four hours of death, and not the result of multiple injuries occurring 19 hours prior to death.

## II. Motion to Suppress for Lack of Corroboration

The appellant's trial defense counsel timely moved to suppress both of the appellant's 8 February 1991 statements because, *inter alia*, they lacked corroboration. After hearing the testimony of SA Jones and SA Leavey, the appellant and his wife, and the trial counsel's offer of proof which succinctly, but accurately, summarized MAJ Daniel's subsequent trial testimony, the military judge found that there was sufficient corroboration for the appellant's statements and denied the motion. He specifically held that the appellant's statements were admissions and not confessions. The military judge admitted the appellant's 8 February 1991 statements at the conclusion of the government's case-in-chief.

The appellant contends that the admissions contained in his 8 February statements were uncorroborated and, consequently, Mil.R.Evid. 304(g)[2] barred their consideration by the court members. We disagree. Military Rule of Evidence 304(g) merely requires independent evidence which establishes the trustworthiness of the confession.[3] *United States v. Maio*, 34 M.J. 215, 218 (C.M.A.), *cert. denied,* —

2. In pertinent part, the rule states:

**Corroboration.** An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence....

(1) **Quantum of evidence needed.** The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.

3. The appellant contends that his statements were tainted because the investigators who questioned him used the preliminary autopsy findings as a basis for questioning him, thereby obtaining statements that simply mirrored the autopsy results. He further contends that because the investigators were merely seeking a statement to corroborate the autopsy findings, those findings cannot now be used to corroborate the statements which were the products of those findings. This novel argument asks us to ignore the practicalities of criminal investigations. We will not do so. The appellant's lies to SA Jones in the early stages of the investigation of his crimes—prior to the radiological examination and autopsy of Jessica's body—demonstrate the irrationality of such an argument.

U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 138 (1992) (citing *United States v. Rounds,* 30 M.J. 76, 80–81 (C.M.A.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990)); *United States v. Melvin,* 26 M.J. 145 (C.M.A.1988); *United States v. Yeoman,* 25 M.J. 1 (C.M.A.1987). The Court of Military Appeals has described the quantum of corroboration evidence required by Mil.R.Evid. 304(g) as "slight" (*Yeoman,* 25 M.J. at 4), or "very slight" (*Melvin,* 26 M.J. at 146). *Maio,* 34 M.J. at 218 n 1. With respect to the six assault offenses of which the appellant was found guilty in the specifications of Charge II, appellant's admissions as to the dates and methods employed to batter Jessica were amply corroborated by the evidence presented by MAJ Daniel which detailed his autopsy findings.[4] With respect to the Charge I and its Specification (unpremeditated murder), the only admission contained in either of the appellant's 8 February 1991 statements was his acknowledgement that he was baby-sitting Jessica while his wife attended a bible study during the evening of 2 February 1991. This fact was corroborated by Mrs. Williams' testimony during the Article 39(a) session that addressed the appellant's suppression motion. We hold that there was adequate corroboration for both of the appellant's 8 February 1991 statements and that the military judge correctly admitted both statements into evidence.

### III. Instructional Error

■ The appellant next contends that the military judge erred in instructing the members with respect to Specification 6 of Charge II, an aggravated assault on Jessica Williams in which grievous bodily harm was inflicted (fractured ribs) by striking her forcefully on the back and on her lower right leg with his [appellant's] hand. The members found the appellant guilty as charged. The appellant correctly notes that the military judge omitted the words "on her lower right leg" in his instruction on the second element, but that in all other respects the instruction was correct. The trial defense counsel did not object to the instruction as given. In the absence of plain error, failure to object constitutes waiver. MCM, 1984, Rule for Courts–Martial 920(f) [hereinafter R.C.M.]; *United States v. Smith,* 34 M.J. 200 (C.M.A.1992); *United States v. Valdez,* 35 M.J. 555, 562 (A.C.M.R.1992). We find that the instructional error was not "obvious and substantial" and did not have "an unfair prejudicial impact on the [members'] deliberations." *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986) (citing *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). Accordingly, there was no plain error and the instructional error was waived.

### IV. Omission of the Flyer as an Appellate Exhibit

■ The appellant contends that the omission from the record of trial of the flyer presented to the members at the outset of the court-martial was a substantial omission that rendered the record of trial incomplete and, therefore, nonverbatim. We disagree. The flyer was never identified as an appellate exhibit in the record of trial.[5] Failure to include the flyer as an

---

4. We again note that, in making his initial ruling denying the trial defense counsel's motion to suppress the appellant's statements, the military judge relied on the trial counsel's proffer summarizing MAJ Daniel's anticipated testimony. Additionally, the military judge ascertained from the trial defense counsel that the judge's understanding of the substance of that testimony was accurate and that the testimony would comport with MAJ Daniel's testimony at the Article 32, UCMJ, investigation testimony the trial defense counsel had observed. Finally, the military judge heard all of the testimony presented during the government's case-in-chief, including MAJ Daniel's testimony prior to admitting the appellant's statements into evidence.

The military judge's treatment of this issue was procedurally correct. Mil.R.Evid. 304(g)(2).

5. There is no mention of the word "flyer" in the record of trial. After assembly of the court-martial and just prior to voir dire of the members, the military judge instructed the members to "please open your folders and examine the charges." Presumably, the flyer was contained in the members' folders. The trial defense counsel did not object to the contents of the folders. On motion by the government appellate counsel, we have admitted, as Government Appellate Exhibit 1, a memorandum from the military judge, dated 17 September 1992, which explains that there was a flyer, but that it was

appellate exhibit is not a substantial omission and does not cause an otherwise complete record of trial to be rendered incomplete or deprived of its verbatim status. *United States v. Johnson*, 33 M.J. 1017 (A.C.M.R.1991), *pet. denied*, 36 M.J. 76 (C.M.A.1992).

## V. Erroneous Post-trial Recommendation

■ The appellant notes that the staff judge advocate's (SJA) post-trial recommendation incorrectly advised the convening authority that, in Specification 4 of Charge II, the appellant was found guilty of committing an aggravated assault on Jessica Williams by intentionally inflicting grievous bodily harm. In fact, the military judge partially granted a defense motion for a finding of not guilty at the conclusion of the government's case-in-chief when he found no evidence of the internal bleeding alleged in the specification. The government succeeded in proving the lesser included offense of assault consummated by a battery on a child under 16 years. Nevertheless, the SJA's recommendation advised the convening authority of a finding of guilty of the greater offense. This was error.

■ Although there is no certificate of service to indicate service of the SJA's recommendation on the trial defense counsel as required by R.C.M. 1106(f)(1), we note that the recommendation, dated 14 June 1991, does indicate that both the recommendation and an "authenticated copy" of the record of trial had been served on the trial defense counsel. We also note that the military judge authenticated the record of trial on 7 June 1991, and the trial defense counsel indicated on 24 July 1991 that she had examined the record of trial. Additionally, the trial defense counsel's "R.C.M. 1105 Comment," dated 10 July 1991, liberally cited pages in the record of trial and pointed out legal errors she believed to have occurred during the court-martial. Finally, the appellant does not assert that the trial defense counsel was not served with a copy of the post-trial recommendation. Failure of the appel-

lant's trial defense counsel to comment on matters contained in the post-trial recommendation results in waiver in the absence of plain error. R.C.M. 1106(f)(6). In this instance, we find that plain error did not occur. *See United States v. Lohrman*, 26 M.J. 610 (A.C.M.R.), *pet. denied*, 27 M.J. 454 (C.M.A.1988) (erroneous but unobjected to statement in SJA's recommendation that accused had pleaded guilty to, and been found guilty of, two specifications of uttering checks with intent to defraud which had, in fact, been dismissed prior to referral, was not plain error). Furthermore, we are convinced that the appellant suffered no prejudice as a result of this error, given the number of assaults of which he was found guilty, and that all of those assaults were overshadowed by the culminating offense of Jessica's murder at the appellant's hands.

## VI. The Appointments Clause and Tenure

The appellant's contention that his court-martial lacked jurisdiction to try him because the military judge was designated in violation of the Appointments Clause of the United States Constitution lacks merit. *United States v. Weiss*, 36 M.J. 224 (C.M.A. 1992). Similarly, his assertion that his court-martial lacked jurisdiction because the military judge did not have a fixed term of office also fails. *United States v. Graf*, 35 M.J. 450 (C.M.A.1992).

## VII. Sentence Appropriateness

■ The appellant, through counsel and personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), asserts that his sentence is inappropriately severe. We disagree. The appellant subjected Jessica to repeated beatings over the final month of her brief, seven-month life. His later assaults fractured ribs and other bones even as bones fractured in earlier assaults were healing. Ultimately, the crushing blow the appellant administered to Jessica's head on the last evening of her life extinguished that life. On the basis of

not marked as an appellate exhibit. A copy of

the flyer is an enclosure to that memorandum.

the entire record, we determine that the sentence is appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge GONZALES concur.