# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private (E-1) ZACHARY A. BENNETT**
**United States Army, Appellant**

ARMY 20121072

Headquarters, III Corps and Fort Hood
Patricia H. Lewis, Military Judge
Lieutenant Colonel Craig E. Merutka, Acting Staff Judge Advocate (pretrial)
Colonel Ian G. Corey, Staff Judge Advocate (post-trial)

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick J. Scudieri, JA (on brief); Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on supplemental assignment of error).

For Appellee: Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Nathan S. Mammen, JA (on brief); Major Daniel D. Derner, JA; Captain Nathan S. Mammen, JA (on supplemental brief).

30 June 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Judge:

A panel with enlisted representation, sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted sodomy, one specification of disobeying a lawful order of a noncommissioned officer, two specifications of indecent act, two specifications of rape, one specification of obstruction of justice, and one specification of communicating a threat, in violation of Articles 80, 91, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§

880, 891, 920, 934 (2006 & Supp. IV; 2006 & Supp. V) [hereinafter UCMJ].[1]  The panel sentenced appellant to a dishonorable discharge, confinement for nine years and nine months, and a total forfeiture of all pay and allowances.  The convening authority approved the sentence as adjudged and credited appellant with 299 days toward his confinement.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises six assignments of error, four of which merit discussion,[2] and two of which merit relief.[3]

## FACTS

*A. Facts Underlying Substantive Offenses*

*1. Rape of Specialist DC*

Appellant, while performing charge of quarters (CQ) duty in early November 2011, told Specialist (SPC) DC that he wanted to show her something.  Appellant opened a photo of his penis on his phone and handed it to SPC DC.[4]  Several days later, while SPC DC was in her barracks room packing for an upcoming deployment,

---

[1] After pleas but before findings, the military judge granted the government's motion to dismiss one specification alleging a violation of a lawful general order and one specification of indecent act in violation of Articles 92 and 120, UCMJ.  Before findings, the military judge granted a defense motion pursuant to Rule for Courts-Martial [hereinafter R.C.M.] 917 for a finding of not guilty to one specification each of conspiracy to commit tax fraud, violating a lawful general order, aggravated sexual assault, and wrongfully attempting to evade a tax, in violation of Articles 81, 92, 120, and 134, UCMJ.  The panel found appellant not guilty of one specification each of aggravated sexual assault and wrongful sexual contact in violation of Article 120, UCMJ.

[2] We find no merit to appellant's fourth assignment of error which asserts the cumulative impact of the errors in this case warrants a new trial.  We also find no merit in appellant's supplemental (sixth) assignment of error.  *See United States v. Rapert*, 75 M.J. 164 (C.A.A.F. 2016).

[3]  The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that are not otherwise mirrored in counsel's assignments of error are without merit.

[4] This case is distinguishable from the conduct alleged in *United States v. Williams*,

(continued . . .)

appellant came by and repeatedly asked her to have sex with him. Specialist DC was in a relationship with a female and initially declined appellant's requests. She eventually relented and engaged in sexual intercourse with appellant in hopes that he would leave her alone.

A few days later, appellant showed up at SPC DC's room and again asked her to have sex with him, stating he was "nervous the first time" and "the second time it will be better." Specialist DC declined appellant's request. Undeterred, the appellant approached SPC DC from behind and pushed her against her bed, onto her hands. While appellant's body weight was on SPC DC, he pulled down her shorts and attempted to insert his penis into her anus. Failing in that effort, appellant inserted his penis into her vagina.

### 2. Indecent Act

On 22 January 2012, appellant, Ms. AT, and Ms. KC gathered at Private First Class (PFC) MG's apartment, where they all proceeded to drink alcohol. At some point, the group reposed to PFC MG's bedroom. Eventually, PFC MG and Ms. KC began making out. Appellant photographed Ms. KC kissing, digitally penetrating, and orally sodomizing PFC MG. Neither Ms. KC nor PFC MG consented to appellant taking these photographs. Ms. AT, at this point feeling uncomfortable, left the room.

### 3. Rape of Ms. AT

Appellant's conviction for raping Ms. AT stemmed from his actions immediately following the incident in PFC MG's bedroom.

Appellant followed Ms. AT out of the bedroom and offered to have sex with her. After Ms. AT declined his request, appellant told Ms. AT that he was going to meet another woman and asked Ms. AT if she had a condom. Ms. AT found a condom in the bedroom and gave it to appellant. She then went to pick up her cell phone. Ms. AT testified that as she was bending over to pick up her phone appellant approached her from behind, and as he was breathing on her neck, stated, "[y]ou know you want this big dick." Appellant then proceeded to rape her. During the assault, appellant had his body weight on Ms. AT and had his arm above her chest, parallel to her body.

Although Ms. AT had drank alcohol and smoked marijuana that evening, her testimony did not indicate that she was thereby incapacitated. Ms. AT testified that

---

(. . . continued)
75 M.J. 663 (Army Ct. Crim. App. 2016), where this court held that showing someone a picture of a penis is not indecent exposure. In this case, appellant is charged with an indecent act.

she felt fine after combining the alcohol and marijuana, and then later she "started feeling real funny" as she was having "like hot flashes" and "[her] heart was racing." She did not believe these feelings came from the mixture of alcohol and marijuana. She told appellant "[n]o, I don't want it" and described her reaction during the assault as:

> freaking out [and] and feel[ing] funny . . . . [m]y eyes are open, I can't see nothing [sic], I'm hot, I'm cold, I'm pissed off, I'm sad, I feel sexually aroused one minute, then I feel just my heart was beating out of my chest, just like I was feeling all these different emotions at this time like, just a whole bunch of stuff.

Ms. AT resisted appellant by telling him "no get off me" and kicking him away from her. She testified that while appellant assaulted her, she "[couldn't] see nothing [sic] but black and white spots everywhere."

### 4. Failure to Obey Order from a Noncommissioned Officer

In an unrelated offense, Sergeant (SGT) LC, while serving as the CQ noncommissioned officer, discovered appellant's door was unsecure. Following standard procedures for handling an unsecured door, SGT LC entered the room to ensure the safety of the occupants. Finding the room empty, SGT LC started to leave the room when he observed a "pipe" on the desk of appellant's roommate. Sergeant LC later instructed appellant not to touch anything in his room, an order appellant disobeyed.

### B. Evidentiary Rulings

### 1. Appellant's Statement and Military Rule of Evidence 413

On 15 July 2011, appellant provided a sworn statement to Special Agent (SA) MB of the U.S. Army Criminal Investigation Command (CID). In this statement, appellant admitted to sexually assaulting another female, Ms. ME, on 15 June 2011. Ms. ME called appellant that day to request a ride to her mother's home. Appellant picked her up, but instead of taking her to her desired location he took her to his barracks room. While in his room, appellant began kissing her. Appellant ignored Ms. ME when she said "I can't do this," continued to kiss her, and proceeded to lower the straps of her shirt as he kissed and fondled her breast. Appellant then put his hand in Ms. ME's pants. She grabbed his hand and told him he "had to stop." Appellant then stopped and soon thereafter dropped Ms. ME off on post. Appellant's statement also indicated he had engaged in other misconduct to include driving while intoxicated, adultery, and making a false official statement.

4

Prior to trial, the government filed a motion to admit appellant's statement to CID pursuant to Military Rule of Evidence [hereinafter Mil. R. Evid.] 413. The government proffered that appellant's statement concerning Ms. ME was admissible for purposes of the sexual assault charges before the court. After considering the arguments of trial and defense counsel, the military judge ruled the appellant's statement was admissible.

> Okay, based on the motions - - - the information contained in the motions, doing the balancing test and following the factors of [Mil. R. Evid.] 413, I find that the evidence is relevant and also that the probative value of the evidence is not substantially outweighed by unfair prejudice. It is considered - - - it is a sexual assault. The act in and of itself would be punishable under the UCMJ and based on the - - - I don't find that there are any - - - by introducing this evidence it will not confuse the issues and I don't find any evidence of it being cumulative based upon what has been presented here in court today. So that will be allowed and the government's motion is granted, solely with respect to the acts on that specific individual.

During the government's case in chief, the military judge admitted appellant's statement to CID in its entirety as a prosecution exhibit. Defense counsel did not request the misconduct unrelated to the assault of Ms. ME be removed or otherwise register an objection to the admission of this exhibit.

### 2. Motion to Suppress Appellant's Statements and Amended Flyer

At trial, defense counsel moved to suppress various statements made by appellant to Sergeant First Class (SFC) DW and Sergeant (SGT) LC. The statements by appellant to SFC DW concerned the appellant's tax returns, which were the basis for the Specification of Charge II (attempted tax evasion) and Specification 2 of Charge VII (also related to tax evasion), and photography of PFC MG and Ms. KC, which was the basis for Specification 2 of Charge V. The statements by appellant to SGT LC concerned the possession of drug paraphernalia, use of drugs, and attempted destruction or loss of a drug pipe found in appellant's room. These statements were relevant to Charge III and its Specification (disobeying an order from a noncommissioned officer), Specifications 1 and 2 of Charge IV (use of synthetic cannabis and possession of a pipe to facilitate using the drug), and Specification 1 of Charge VII (obstruction of justice).

After hearing all of the evidence and argument, the military judge stated:

> I plan to answer all of them in one fell swoop, but now that you guys have given me two additional cases, in fairness to both sides, I need to sit down and read both *Phillips* and *Ford* in their entirety to ensure that we are tracking, and respond to you no later than tomorrow morning.

During the next court session, the government dismissed Specification 1 of Charge IV.[5] Trial counsel then asked the military judge if she had reconsidered her "previous ruling" concerning "certain evidence," an apparent reference to the previous motion hearing. The military judge then indicated she had reconsidered her decision to suppress "certain evidence" and denied the government's request. The military judge did not announce on the record her ruling on the motions to suppress appellant's statements to SFC DW and SGT LC, nor did she append written findings of fact and conclusions of law as an appellate exhibit.

During its case in chief, the government did not use any of the statements to SFC DW and SGT LC that were the subject of defense counsel's motions in limine. In fact, SFC DW did not testify. At the close of the government's case on findings, defense counsel moved for a finding of not guilty pursuant to Rule for Court-Martial [hereinafter R.C.M.] 917 as to the Specification of Charge II, Specification 2 of Charge IV, Specification 2 of Charge VII, and the Specification of The Additional Charge. After granting these motions, the military judge directed trial counsel to prepare a new flyer for the panel with the four dismissed specifications removed. Only the original flyer with the charges initially referred is in the record.

*C. Instructions*

At the close of evidence on findings, the military judge discussed with counsel the instructions she intended to provide the panel concerning the charges and specifications still remaining after her ruling on the R.C.M. 917 motion. After discussing proposed instructions, neither the government nor the defense raised an objection or asked the military judge for additional instructions to what she proposed, and ultimately provided to the panel.

---

[5] This specification alleged appellant violated paragraph 4(a) of Command Policy SJA-03, dated 13 May 2010, by wrongfully using synthetic cannabis.

*1. Mil R. Evid. 413 Evidence*

The military judge did not instruct the panel as to the proper use of the evidence admitted under Mil R. Evid. 413.[6] However, the military judge did provide a "spillover" instruction to the members substantially consistent with the standard Benchbook instruction.[7]

During closing argument, the government presented its theory concerning the nature of appellant's offenses: "When someone says ["no,"] he doesn't stop." Trial counsel first turned to appellant's pursuit of and refusal to accept Ms. AT's resistance to his advances. Trial counsel then turned to the allegations involving SPC DC in arguing "[t]hat same pushing from months prior that you see with [SPC DC] and again sometimes he gets what he wants." In describing the "wrongful sexual contact" by grabbing SPC DC's breasts (Specification 3 of Charge V), trial counsel apparently alluded to the incident with Ms. ME in arguing it as "the same thing from months prior, that you can look at. . . . In his barracks room and he starts groping without consent." Trial counsel later referenced the Mil. R. Evid. 413 evidence in relation to SPC DC's tearful demeanor while testifying to the rape allegation by arguing "[a]gain, the pushing is the same thing that happened with [Ms. ME], with each person he pushes." Yet later, in arguing appellant was not mistaken as to SPC DC's lack of consent, trial counsel again made an apparent reference to the Mil. R. Evid. 413 evidence by stating "[l]ook at under the circumstances what he knows after time and time again, he's told ["no"], because he's the same person who keeps pushing who months later does the same thing to [SPC DC]."

*2. Specification 7 of Charge V*

Throughout the trial, the government presented its case for the assault of Ms. AT as one of rape by force. The military judge instructed on the elements of the offense and then defined "sexual act" as "the penetration however slight of the vulva by the penis or of the genital opening of another by a hand or finger or by an object with the intent to arouse, humiliate, harass or degrade any person or to arouse or gratify the sexual desire of any person." The military judge continued:

> "Substantially impaired" means a level of mental impairment that rendered the alleged victim unable to apprise the nature of the sexual conduct at issue, unable to decline participation in the sexual conduct at issue, or

---

[6] *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judge's Benchbook [hereinafter Benchbook], 7-13-1 n.3 (1 Jan. 2010).

[7] *See* Benchbook, para. 7-17 n.1.

> unable to physically communication [sic] unwillingness to engage in the sexual conduct at issue.
>
> "Unconscious" means incapable of responding to sense or stimuli and of having subjective experiences. An unconscious person isn't capable of creating memories for later recall. Lack of memory may be evidence of unconsciousness, but the mere inability to recall sometimes associated with excessive alcohol consumption is insufficient to prove beyond a reasonable doubt that the person was unconscious.[8]

The military judge properly instructed the panel on the standard definition of "force" as "actual action to compel submission of another or to overcome or prevent another's resistance by physical violence, strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual act."[9] As to the defense of consent, the military judge instructed:

> A person cannot consent to sexual activity if that person is substantially incapable of apprising the nature of the sexual conduct at issue due to mental impairment or unconsciousness resulting from consumption of alcohol, drugs, and a similar substance or otherwise. Again, substantially incapable of physically declining participation in the sexual conduct at issue, substantially incapable of physically communicating an unwillingness to engage in the sexual conduct at issue.[10]

The military judge continued by instructing the panel concerning mistake of fact[11] and the government's burden of proof beyond a reasonable doubt. No further reference was made to substantial impairment or to unconsciousness.

### 3. Communicating a Threat

Specification 3 of Charge VII alleged:

---

[8] *See* Benchbook, para. 3-45-3*d.*

[9] *See Id.* at n.6.

[10] *See Id.* at n.10.

[11] *See Id.* at n.11.

> In that [appellant], did, at or near Fort Hood, Texas, on or about 3 February 2012, wrongfully communicate to [Ms. ST] a threat to harm his chain of command, *including [SFC DW]*, which conduct, under the circumstances, was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces. (emphasis added).

At trial, the government called Ms. ST, a Medical Service Assistant employed at the Darnell Army Medical Center (DAMC) at Fort Hood. On 3 February 2012, appellant entered the DAMC mental health clinic and demanded to see his provider. Ms. ST attempted to assist appellant, who was visibly upset, as his provider was not available. Trial counsel and Ms. ST then engaged in the following colloquy:

> Q. To the best of your ability, could you describe still his demeanor, his tone, and the language he used and that sort of thing when he was in your office.
>
> A. He was very angry. He was cursing profusely. He – his – the voice level was loud and I - - usually I'm able to diffuse the situation . . . .
>
> Q. In this case were you able to diffuse the situation?
>
> A. No, in fact, I never was able to understand what the problem was at all.
>
> Q. Did he specifically say anything about anybody in his chain of command or chain of responsibility?
>
> A. Yes, he was angry. He did say that – he did say that he wasn't going to hurt himself, but he did say he was going to hurt his First Sergeant and other sergeants. He mentioned who they were, but I didn't catch it.
>
> Q. When you - - - when he said he was going to hurt his First Sergeant and other sergeants and he said their names, it sounds like; is that fair to say?
>
> A. That would - - yes.
>
> Q. Did he say he was thinking about it or that he was going to?

9

A. He said that he was going to hurt them.  He did not say he was going to kill them; he said he was – they were going – he was going to hurt them though.

And later, on cross-examination by defense counsel:

Q. You testified that Private Bennett made a statement to you and if I can paraphrase, your statement that you testified, was that he was going to hurt members of his chain of command; is that correct?

A. Mm-hmm.

MJ: Yes.

Q. Is that a yes?

A. Yes.

The military judge instructed the members concerning the elements of communicating a threat consistent with the Benchbook.[12]  As to the first element, the military judge instructed that "the accused communicated certain language, to wit, that he wanted to hurt his chain of command and *first sergeant*, or words to that effect" (emphasis added).

## LAW AND DISCUSSION

### A.  Mil. R. Evid. 413 Evidence

Appellant's first assignment of error asserts that the military judge erred in admitting evidence concerning appellant's sexual assault of Ms. ME under Mil. R. Evid. 413.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion.  *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006).  "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion.  The challenged action must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous."  *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citing *United States v. McElhany*, 54 M.J. 120, 130 (C.A.A.F. 2000) (internal quotations omitted).

---

[12] *See* Benchbook, para. 3-110-1.

Mil. R. Evid. 413(a) provides that "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." This includes using evidence of another sexual offense to prove that an accused has a propensity to commit sexual offenses. *United States v. James*, 63 M.J. 217, 219-20 (C.A.A.F. 2006); *United States v. Wright*, 53 M.J. 476, 480 (C.A.A.F. 2000). There is a general presumption in favor of admission of evidence offered under this rule. *United States v. Berry*, 61 M.J. 91, 94-95 (C.A.A.F. 2005) (citing *Wright*, 53 M.J. at 482-83). The drafter's analysis of Mil. R. Evid. 413 states that the rule is intended to "provide for more liberal admissibility of character evidence in criminal cases of sexual assault where the accused has committed a *prior* act of sexual assault." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*, 2012], Mil. R. Evid. 413 analysis, app. 22 at A22-37 (emphasis added).

Our superior court has set forth requirements for admissibility of evidence of similar sexual offenses under Mil. R. Evid. 413. The analysis begins by examining whether three threshold requirements are met: "(1) the accused must be charged with a sexual offense; (2) the proffered evidence must be evidence of the accused's commission of any other sexual offense; and (3) the evidence must be relevant under Mil. R. Evid. 401 and 402." *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citations omitted). With regard to the second threshold requirement, the military judge must conclude that "the members could find by a preponderance of the evidence that the offenses occurred." *Id.* (citing *Wright*, 53 M.J. at 483).

Once these three threshold findings are met, "the military judge is constitutionally required to also apply a balancing test under [Mil. R. Evid.] 403." *Solomon*, 72 M.J. at 179-80 (citing *Berry*, 61 M.J. at 95). Mil. R. Evid. 403 states that the judge "may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the context of a Mil. R. Evid. 413 analysis, the Mil. R. Evid. 403 "balancing test should be applied in light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible[.]" *Solomon*, 72 M.J. at 180 (citing *Wright*, 53 M.J. at 482) (alteration in original). "The importance of careful balancing arises from the potential for undue prejudice that is inevitably present when dealing with propensity evidence." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.AF. 2010) (quoting *James*, 63 M.J. at 222). Factors considered in conducing this balancing test include, but are not limited to:

> the strength of the proof of the prior act; the probative weight of the evidence; the potential to present less prejudicial evidence; the possible distraction of the fact

> finder; the time needed to prove the prior conduct; the temporal proximity of the prior event; the frequency of the acts; the presence of any intervening circumstances; and the relationship between the parties.

*Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482). "No one factor is controlling, although in a given case it could be." *United States v. Bare*, 65 M.J. 35, 37 (C.A.A.F. 2007). When the Mil. R. Evid. 403 balancing test requires exclusion of the evidence at issue, "the presumption of admissibility is overcome." *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83).

Appellant does not dispute that the evidence of the sexual assault of Ms. ME satisfied the initial threshold for admissibility. The accused stood charged with several sexual offenses; the appellant's statement was clearly evidence of appellant's commission of an uncharged sexual offense against Ms. ME; and the evidence was relevant, especially in the context of a case involving numerous sexual offenses, one of which was very similar in nature to appellant's assault of ME.

Appellant asserts the military judge, in applying the balancing test required under Mil. R. Evid. 403, failed to consider the potential for less prejudicial evidence than that admitted by the military judge. Additionally, the military judge failed to specify which of the charged offenses were similar to the sexual assault of Ms. ME and permitted admission of appellant's entire statement, to include other acts of uncharged misconduct unrelated to a sexual offense.

We find these arguments unpersuasive. First, we note that trial defense counsel neither sought clarification as to which offenses the Mil. R. Evid. 413 evidence was admissible, nor requested the military judge to mask the other uncharged misconduct from appellant's statement before it was admitted into evidence. We will not speculate as to the trial defense counsel's tactical reasons for remaining silent in this regard. However, viewing the record as a whole, we can envision many reasonable reasons for not highlighting the other uncharged misconduct by masking the exhibit. Finally, and perhaps most importantly, appellant simply fails to suggest or propose the less prejudicial evidence the military judge should have admitted. Overall, we conclude that the military judge did not abuse her discretion in admitting evidence of appellant's assault of ME and the remainder of the appellant's statement.

### B. Instructions

Appellant's second assignment of error asserts the military judge erred by failing to provide the members an instruction for the evidence admitted pursuant to Mil. R. Evid. 413, adding additional theories of guilt when instructing as to the offense of rape, failing to provide instructions for the lesser-included offenses for

rape, and using the wrong language in instructing on the offense of communicating a threat.

"[T]he judge has substantial discretionary power in deciding on the instructions to give." *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citation omitted). We review a military judge's non-mandatory panel instructions for an abuse of discretion and the correctness of the instructions actually given de novo. *United States v. Davis*, 75 M.J. 537, 543 (Army Ct. Crim. App. 2015); *see also United States v. Forbes,* 61 M.J. 354, 358 (C.A.A.F. 2005). In a case of unpreserved error when there was no objection to the instructions, we review for plain error. *United States v. Payne*, 73 M.J. 19, 22-23 (C.A.A.F. 2014) ("Where there is no objection to an instruction at trial, we review for plain error."). "The plain error standard is met when: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008) (citation and internal quotation marks omitted).

In evaluating non-constitutional error, we must determine whether the instructional error had "substantial influence" on the findings. *United States v. Gibson,* 58 M.J. 1, 7 (C.A.A.F. 2003) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765 (1946)); *see Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (instructional errors are of constitutional magnitude if there is "'a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.") (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)); *see also United States v. Dacosta*, 63 M.J. 575, 579 (Army Ct. Crim. App. 2006). If we find error such that it rises to a constitutional dimension, we may only affirm the affected findings of guilty if we determine the error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24 (1967); *United States v. Kreutzer,* 61 M.J. 293, 298–99 (C.A.A.F. 2005).

As an initial matter, we find that appellant forfeited any instructional error by failing to object to any of the military judge's instructions listed in appellant's second assignment of error. *See Davis*, 75 M.J. at 543.

### *1. Mil. R. Evid. 413 Evidence*

Our court has revisited what instructions are proper when evidence is admitted under Mil. R. Evid. 413. *See United States v. Williams*, 75 M.J. 621 (Army Ct. Crim. App. 2016), *pet. granted*, 75 M.J. __ (C.A.A.F. 22 June 2016). We need not belabor the obvious error committed by the military judge in failing to provide an appropriate instruction for the members concerning the evidence admitted pursuant to Mil. R. Evid. 413. The issue before us, instead, is whether the absence of such an instruction was harmless beyond a reasonable doubt. We find that it was.

First, we look to the nature of the Mil. R. Evid. 413 evidence. The appellant, ignoring Ms. ME's verbal resistance, fondled her breasts and put his hands down her pants, stopping only after she pulled his hand away. Specification 3 of Charge V alleged similar conduct with SPC DC. The panel acquitted appellant of this specification, a clear indication that the panel did not give immense weight to appellant's propensity to act in this manner.

Second, we look to the purpose of Mil. R. Evid. 413 and any propensity instruction once such evidence is admitted. Mil. R. Evid. 413 allows the government to admit and use propensity evidence in certain circumstances where an accused is charged with a sexual offense that would not be permitted with most other offenses. *See Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *M.C.M.*]*,* app. 22 at A22-37. An instruction is important to ensure the evidence is appropriately considered for this purpose.

However, here is not a case where the military judge gave the panel a confusing or poorly worded instruction concerning Mil. R. Evid. 413 evidence. They received *no* instruction. Accordingly, we look to the other instructions provided by the military judge. Specifically, the military judge provided the members the standard spillover instruction in stating:

> An accused may be convicted only on the evidence before the court and not on evidence of a general criminal disposition. Each offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you find or believe that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming or proving that he committed any other offense.
>
> If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense – excuse me, each offense to which it is relevant. For example, if a person were charged with stealing a knife and later using the knife to commit another offense, evidence concerning the knife such as that person being in possession of it or that person's fingerprints being found on it, could be considered with regard to both offenses. But the fact that a person's guilt of stealing the knife may have been proven, is not evidence that the person is also guilty of any other offense.

> The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

Read in its entirety, this instruction effectively told the members that they could not consider the Mil. R. Evid. 413 evidence for any purpose. Again, the panel's acquittal of the appellant of the specification involving conduct that was most similar to the Mil. R. Evid. 413 evidence shows the panel followed the military judge's admonition in the spillover instruction.

Finally, we look to the evidence itself. The evidence underlying the offenses involving SPC DC and Ms. AT of which the appellant was convicted was very strong and convincing. *See Dacosta,* 63 M.J. at 583. We are convinced any error in the military judge's failure to provide a Mil. R. Evid. 413 instruction was harmless beyond a reasonable doubt.

### 2. Specification 7 of Charge V

Appellant asserts the military judge improperly instructed the panel as to Specification 7 of Charge V, alleging appellant raped Ms. AT by force, by presenting alternate theories of liability to the panel.

Whether a panel was properly instructed is a question of law which we review de novo. *United States v. Mott*, 72 M.J. 319, 325 (C.A.A.F. 2013) (citing *United States v. Garner,* 71 M.J. 430, 432 (C.A.A.F. 2013)).

"The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163-64 (C.M.A. 1990)). The judge "must bear the primary responsibility for assuring that the [panel] properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." *Id.* (citing *Westmoreland*, 31 M.J. at 164) (internal quotation marks omitted).

We find the military judge erred by providing the definition of "substantially impaired" and "unconscious"[13] after providing the elements of rape to the members. The language used by the military judge substantially followed the "boilerplate" instruction in the Benchbook[14] and was inadvertently read in this case. However, we

---

[13] *See* Benchbook, para. 3-35-3*d.*.

[14] *Id.*

15

find the judge did not introduce a theory of criminal liability upon which the court-martial might improperly convict.

First, the government alleged, and maintained throughout trial, that appellant raped Ms. AT by force. While the military judge's instructions included the definitions for "substantially impaired" and "unconscious," these concepts are applicable only when a rape is the product of rendering another unconscious or by the administration of a drug, intoxicant, or similar substance without the victim's knowledge. *See MCM,* 2012, app. 28, A28-5. Hence, these concepts were inconsistent with the government's theory and the evidence presented that Ms. AT was not incapacitated or unconscious at the time of the assault; she, in fact, remembered vividly the appellant's assault.

Second, the military judge, in instructing on the elements for rape, was specific in informing the members that to find appellant guilty, they had to be convinced that appellant committed the act by using force, that being "strength, power and restraint sufficient enough so that Ms. AT could not avoid or escape the act." The military judge additionally defined "force" consistent with the Benchbook as "actual action to compel submission of another or to overcome or to prevent another's resistance by physical violence, strength, power or restraint applied to another person sufficient so that the other person could not avoid or escape the sexual act."[15] Incapacitation or unconsciousness are not inherent or suggested in the element or definition of force provided by the military judge. It was clear to the members that to convict they had to find appellant used physical force. Further the military judge did not provide a variance instruction that could have invited the members to convict appellant for rape under a different theory.

Third, the affirmative defense of consent, as instructed by the military judge, did not reduce the burden upon the government to prove rape by force. The instructions provided by the judge on the government's burden to prove force were correct, and there is nothing in the court-martial's findings that provides any basis to doubt the reliability of appellant's conviction of rape by using force.

Fourth, appellant was not charged with rape by either rendering AT unconscious or by administration of an intoxicant, nor was appellant charged with aggravated sexual assault upon a substantially incapacitated person. *See MCM*, 2012, app. 28, A28-1. Though the definition of competence includes reference to unconsciousness, there is no danger that an accused charged with rape by using force would be unjustly convicted of any of these other offenses. The law as provided in the standard instructions ensures that guilt for rape by force comes only where the accused compels submission or otherwise overcomes or prevents resistance. The risk of conviction on a theory uncharged is therefore based on speculation alone.

---

[15] Benchbook, para. 3-53-3(d) at n.6

*See generally United States v. Taylor*, 53 M.J. 195, 199 (C.A.A.F. 2000). But we need not speculate. "Absent evidence to the contrary, this [c]ourt may presume that members follow a military judge's instructions." *Id.* at 198. AT was competent. She refused to consent to sexual conduct with appellant. She verbally and physically resisted his efforts to commit sexual acts upon her. Appellant used force to overcome that resistance and compel her submission. The evidence is legally and factually sufficient to establish appellant's guilt for rape by using force and there is nothing illogical or inconsistent about the panel's findings.

### 3. Lesser Included Offenses, Specifications 4 and 7 of Charge V

We next turn to appellant's allegation that the judge failed to instruct on the lesser-included offense of aggravated sexual assault by force. "A military judge has a sua sponte duty to instruct the members on any lesser-included offenses reasonably raised by the evidence." *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (citation omitted); *see United States v. Wells*, 52 M.J. 126, 129-30 (C.A.A.F. 1999). The military judge should only instruct on a lesser-included offense "where the greater offense requires members to find a disputed factual element which is not required for conviction of the lesser violation." *United States v. Tunstall*, 72 M.J. 191, 192 (C.A.A.F. 2012) (quoting *United States v. Miergrimado*, 66 M.J. 34, 36 (C.A.A.F. 2000); *see Sansone v. United States*, 380 U.S. 343, 350 (1965). Omission of an instruction on a lesser-included offense that is raised by the evidence must be tested for harmlessness beyond a reasonable doubt. *See United States v. Brown*, 63 M.J. 735, 740 (Army Ct. Crim. App. 2006); *Wells*, 52 M.J. at 130 ("[R]eversal is required only when an appellate court is convinced that the *evidence* issues are such that a rational jury could acquit on the charged crime but convict on the lesser crime.") (citation and internal quotation marks omitted).

With regard to PFC DC, we are convinced beyond a reasonable doubt appellant exercised such force necessary for the offense of rape by force. We are not convinced that the evidence is such that a rational jury would have, in the first instance, acquitted appellant of this offense, so consideration of a lesser-included offense is not necessary. The evidence clearly established appellant forced PFC DC onto the bed and onto her hands. The force of his weight rendered her unable to move her hands. In that state, appellant attempted to penetrate her anus and then succeeded in penetrating her vagina. Further, nothing in the facts at trial fairly suggested a lesser-included offense was appropriate or even reasonably raised by the evidence.

With respect to Ms. AT, consent, reasonable mistake of fact, and intoxication were at issue, as appellant correctly notes. However, these are all issues for the offense of rape and aggravated sexual assault. If the panel had found Ms. AT consented to the sex act, appellant would have been acquitted of either offense. But, we need not go further with that analysis. Ms. AT's testimony clearly established

appellant used sufficient force to commit his offense, despite Ms. AT's efforts to resist and kick appellant to stop his advances. We find a rational panel would not have acquitted appellant of rape.

Accordingly, we find this allegation of error to be without merit.

### 4. Communicating a Threat[16]

The military judge erred, in part, in her instructions to the members concerning Specification 3 of Charge VII by stating the threat communicated to Ms. ST was appellant's intent to harm his chain of command and *first sergeant*. The allegation specified the threat communicated to Ms. ST was appellant's intent to harm his chain of command, to include *SFC DW*. As the government presented no evidence to the panel that SFC DW was appellant's first sergeant, we will grant partial relief as to this specification in our decretal paragraph. We otherwise find appellant's claim of error on this issue without merit.

### D. Incomplete Record

### 1. Motions in Limine

In his third assignment of error, appellant alleges that the record is incomplete because the military judge's ruling on two defense motions in limine regarding statements made by appellant to SFC DW and SGT LC, respectively, and an amended flyer directed by the military judge are not included in the record of trial.

"Whether a record is complete and a transcript is verbatim are questions of law that this Court reviews de novo." *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014). "The requirement that a record of trial be complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived." *Id*. (citing *United States v. Henry*, 53 M.J. 109, 110 (C.A.A.F. 2000).

R.C.M. 1103(b)(2)(B) requires a verbatim transcript:

> of all sessions except sessions closed for deliberation and voting when: (i) Any part of the sentence adjudged exceeds six months confinement, forfeiture of pay greater than two-thirds pay per month, or any forfeitures of pay for more

---

[16] In the supplemental brief, appellant refers to this error in its pleading in reference to Charge V, which is a violation of Article 120; however the substance of the argument relates to Specification 3 of Charge VII which is a violation of Article 134, communicating a threat.

>than six months or other punishments that may be adjudged
>by a special court-martial; or (ii) a bad conduct discharge.

A verbatim transcript is required in this case as appellant was sentenced to nine years and nine months of confinement and a dishonorable discharge.

In order for a record to be verbatim, "all sidebar conferences, arguments of counsel, and rulings and instructions by the military judge" must be included. R.C.M.1103(b)(2)(B) discussion.

"In assessing either whether a transcript is verbatim, the threshold question is 'whether the omitted material was 'substantial,' either qualitatively or quantitatively.'" *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982); *cf. United States v. Gaskins*, 72 M.J. 225, 229 (C.A.A.F. 2013) (citing *Henry*, 53 M.J. at 111) (stating that a "substantial" omission makes a record incomplete).

The military judge's ruling on the suppression motions and the amended flyer are not included in the record; however the record is substantially verbatim. "Transcripts need not be 'word for word,' but must be substantially verbatim." *Davenport*, 73 M.J. at 377 (quoting *Lashley*, 14 M.J. at 8). "A transcript may be deemed substantially verbatim though it has certain omissions." *Davenport*, 73 M.J. at 377. (citation and internal quotation marks omitted). These omission are not substantial as they do not relate "directly to the sufficiency of the Government's evidence on the merits." *Davenport*, 73 M.J. at 377 (citing *Lashley*, 14 M.J. at 9).

First, SFC DW did not testify at trial, so appellant's statement made to him had no bearing on the government's evidence concerning the appellant's indecent act in photographing PFC MG and Ms. KC. The military judge's ruling did not otherwise impact the other evidence introduced by the government (i.e., the testimony of Ms. AT) to prove this offense. Second, the other two charges that were the subject of the motion in limine regarding appellant's statements to SFC DW, tax evasion, were dismissed by the military judge in granting defense counsel's motion for a finding of not guilty pursuant to R.C.M. 917.

The military judge's second motion in limine ruling likewise did not affect the charges that were the subject of SGT LC's testimony. First, SGT LC's testimony did not include the statements by appellant that were the subject of the motion in limine. We note specifically that appellant does not allege otherwise before this court. Second, the military judge granted defense counsel's motion under R.C.M. 917 concerning Specification 2 of Charge IV, which alleged appellant wrongfully possessed a pipe for smoking synthetic cannabis.

In short, the absence of the military judge's rulings on the two motions in limine can hardly be a substantial omission when the evidence sought suppressed by defense counsel was not brought before the factfinder and could not have swayed any result in appellant's trial. Furthermore, the charges relating to the evidence were dismissed making the evidence irrelevant. None of appellant's statements that were the subject of the motions in limine were introduced or relevant to the charges of which the panel found appellant guilty.

### 2. Flyer

In reference to the amended flyer, our predecessor has twice held that a flyer omitted from the record is not a substantial omission. *See United States v. Cudini*, 36 M.J. 572, 573 (A.C.M.R. 1992) ("We hold that the failure to attach the flyer as an appellate exhibit is not a substantial omission."); *United States v. Williams*, 36 M.J. 785, 789-90 (A.C.M.R. 1993) ("Failure to include the flyer as an appellate exhibit is not a substantial omission and does not cause an otherwise complete record of trial to be rendered incomplete or deprived of its verbatim status.").

The record shows the military judge ordered that a new flyer be prepared without the four specifications dismissed by the military judge pursuant to R.C.M. 917. Trial counsel, in fact, sought specific guidance as to what the military judge wanted. The record contains no further discussion on the topic suggesting that the government failed to comply with the military judge's request. Defense counsel did not raise an objection to flyer following the military judge's instructions. Simply, there is nothing to suggest that the flyer presented to the panel was not amended.

We also note that the military judge's instructions did not discuss, and the findings worksheet did not list, the specifications dismissed by the military judge. Also, the members did not appear to be confused by the absence of the dismissed charges in the instructions or on the findings worksheet as they did not seek an explanation from the military judge for their absence. This further shows that the silence of the record concerning the amended flyer had no impact on the proceedings. We therefore find this issue without merit.

### D. Dilatory Post-Trial Processing

In his fifth assignment of error, appellant asserts that the government's dilatory post-trial processing his case warrants relief. We agree. The convening authority took action 665 days after the sentence was adjudged. Forty-two days are attributable to the defense, thus 623 days are attributable to the government. The record in this case consists of nine volumes, and the trial transcript is 857 pages. We find 623 days to be excessive.

Although we find no due process violation in the post-trial processing of appellant's case, we must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."). *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000). The government's reason for the delays–essentially, insufficient court reporter support given overall caseload demands–is not persuasive. *See Arriaga,* 70 M.J. at 57.

The appellant requested speedy post-trial delay in his post-trial submission. It took 373 days to transcribe the record of trial and to serve the record of trial on appellant's defense counsel, and 57 days for the military judge to authenticate the record of trial in this case. The delay between announcement of sentence and action is simply too long, and could "adversely affect the public's perception of the fairness and integrity of military justice system . . . ." *Ney*, 68 M.J. at 617. Thus, we find relief is in order and will provide for such in our decretal paragraph.

**CONCLUSION**

We AFFIRM only so much of Specification 3 of Charge VII as reads:

> In that [appellant], did, at or near Fort Hood, Texas, on or about 3 February 2012, wrongfully communicate to [ST] a threat to harm his chain of command, which conduct, under the circumstances, was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.[17]

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and

---

[17] We note that even though this specification, as amended, does not reference a particular person by name, it still states an offense. *See United States v. Gilluly*, 13 U.S.C.M.A. 458, 460-61, 32 C.M.R. 458 (C.M.A. 1963). (finding threat to harm "his buddies" at the Officers and Noncommissioned Officers Clubs sufficient to identify the potential victims of the threat).

*United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident that based on the entire record and appellant's course of conduct, the panel would have imposed a sentence of at least that which was adjudged and offer no sentence relief on this basis. However, given the dilatory post-trial processing, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for nine years and seven months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings of guilty, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge MULLIGAN and Judge HERRING concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court